IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TYLER S. KING                                                                          PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:18-CV-00672-HTW-LRA

JON HAMMET, INDIVIDUALLY;
JON HAMMET, INC.; AND ALLSTATE PROPERTY
AND CASUALTY INSURANCE COMPANY                                      DEFENDANTS

---

**MEMORANDUM BRIEF IN SUPPORT OF ALLSTATE
PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR JUDGMENT ON THE PLEADINGS**

---

COMES NOW, the Defendant, Allstate Property and Casualty Insurance Company (hereinafter sometimes referred to as "Allstate"), by and through counsel, pursuant to the Federal Rules of Civil Procedure, and files this Memorandum Brief in Support of its Motion to Dismiss or, in the alternative, Motion for Judgment on the Pleadings, and in support thereof, would show unto the Court as follows:

## I.      INTRODUCTION AND FACTUAL BACKGROUND

The Plaintiff, Tyler S. King (hereinafter referred to as "Plaintiff"), filed suit on August 31, 2018 in the Circuit Court of Madison County, Mississippi, and on September 27, 2018, Allstate properly removed the lawsuit to this Honorable Court. The Plaintiff's claims against his insurance agent, Jon Hammett and Jon Hammett, Inc.,[1] and his insurance carrier, Allstate, arise as a result of a leaky water pipe in his house. *See Complaint*, ¶ 18 [Document #1-1]. In essence, the Plaintiff's lawsuit is premised upon a breach of contract as a result of a pocketbook dispute and nothing more.

---

[1] "Hammet" and "Hammett" are used interchangeably throughout the Plaintiff's Complaint. For clarity, the correct spelling, "Hammett", is used herein.

Yet, the Plaintiff has purportedly set forth claims against Allstate for bad faith refusal to pay claims, and collectively against both Allstate and Jon Hammett and/or Jon Hammett, Inc., for negligence, gross negligence, and fraud. *See Complaint*, ¶¶ 92-110 [Document #1-1].

A review of the allegations as set forth in the Complaint reveal that, under the *Iqbal* and *Twombly* heightened pleading standard, the Plaintiff has failed to state a claim upon which relief can be granted as to his claims of (1) bad faith; (2) negligence; (3) gross negligence; and (4) fraud. *Id*. The Plaintiff's demand for payment for diminution of value of his property, punitive damages, hedonic damages, pain and suffering, loss of the enjoyment of life, attorney's fees, pre-judgment interest, and costs and expenses are without basis and should be dismissed as well. *See Complaint*, ¶ 111 [Document #1-1]. The Plaintiff failed to plead fraud with particularity which constitutes an additional separate ground for dismissal of that count pursuant to Rule 9 of the Federal Rules of Civil Procedure.

The four counts that are explicitly set forth within the Complaint should be dismissed because the Plaintiff fails to allege facts supporting the theories of recovery. Though the Plaintiff sets forth a lengthy timeline of events within his pleading, they do not support the *prima facie* causes of action as alleged. In addition to alleging that the Plaintiff's claim was denied (it was not) and other facts which are not relevant to any of his theories of recovery sought to be dismissed by this motion, the Complaint includes only very limited factual allegations within each of the specific counts as addressed herein.

## II.   LAW AND ARGUMENT

### A.   A Complaint Must State Plausible Claim for Relief.

Rule 8(a) of the Federal Rules of Civil Procedure sets forth the pleading requirements to state a claim for relief. Rule 8 requires that a pleading "must contain: . . . a short and plain statement

of the claim showing that the pleader is entitled to the relief. . . .["]2 Fed. R. Civ. P. 8(a)(2). Following the United States Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts have recognized that the pleading requirements of Rule 8 have "shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than a possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3rd Cir. 2009); *See also Noatex Corp. v. King Construction of Houston, LLC*, 2013 WL 12241279 at 1 (N.D. Miss. 2013) (observing that the *Twombly* "'plausibility' standard raises the fair notice standard to a heightened pleading standard requiring that factual allegations be more than mere labels and conclusions and a formulaic recitation of the elements of a cause of action"); *See also In Re Morey*, 2012 WL 369486 at 6 (Bankr. S.D. Miss. 2012) (noting heightened pleading standards following *Iqbal* and *Twombly*).

To survive a Rule 12(b)(6) motion, a complaint must state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679; *See also Twombly*, 550 U.S. at 547. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The allegations must have "nudged [the] claims across the line from conceivable to plausible . . . ." *Twombly*, at 569. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, at 678 (quoting *Twombly*, at 557). In *Iqbal*, the plaintiff alleged that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement . . . ." 556 U.S. at 680.

---

2 Pursuant to Fed. R. Civ. P. 81(c)(1), the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court."

The United States Supreme Court held that these are mere "bare assertions" which amount to a "formulaic recitation of the elements" of the claim. *Id.* at 681. The Court held that the "allegations are conclusory and not entitled to be assumed." *Id.*

"Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level." *Seahorn Investments, LLC v. Goodman Mfg. Co., LP*, 667 F. App'x 452, 454 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1068, 197 L. Ed. 2d 177 (2017) (quoting *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)) (unpublished). For state law claims, "[a] federal court sitting in diversity applies the substantive law of the forum state." *Id.* (quoting *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013)).

Alternatively, Rule 12(b)(6) motions to dismiss for failure to state a claim may be converted to a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See, generally,* Fed. R. Civ. P. 12(c). As necessary, the Defendant requests that the Court consider dismissal of the counts set forth under Rule 12(c).

### B. Allegations Directed Collectively to All Defendants Should Be Disregarded and Dismissed.

The allegations of Counts II (gross negligence), III (negligence), and IV (fraud) of the Complaint are directed collectively against all Defendants and each impermissibly seeks to incorporate all prior allegations within the pleading. As filed by the Plaintiff, the Complaint is no more than a shotgun pleading that fails to differentiate between the Defendants as the only allegations directed to Allstate or the insurance agent within each count are conclusory and a bare-bones "recitation of the elements". *See Iqbal*, at 681.

In Count II, the Plaintiff alleges that Allstate "has handled the homeowners claim of Tyler King, as described in this Complaint, in a grossly-unreasonable and reckless manner", constituting

gross negligence, and in Count III, in a "unreasonable and reckless manner" constituting negligence. *See Complaint*, ¶¶ 98 and 103 [Document 1-1].

Regarding his insurance agent, the Plaintiff alleges in Count II that "Jon Hammet/Jon Hammet, Inc., committed the tort of (gross) negligence toward Tyler King when they, in a shocking disregard for interests of Tyler King, and his family, advised Tyler King to purchase the Allstate 'Deluxe Plus' Homeowners Policy No. 985 017 262", or in Count III, that his agent did so negligently. *See Complaint*, ¶¶ 99 and 104 [Document 1-1].

Concerning his allegation of fraud in Count VI, the Plaintiff alleges that:

[t]he Defendants made knowing misrepresentations of material terms of the "Deluxe Plus" Allstate homeowners insurance policy that Jon Hammet/Jon Hammet, Inc. sold to Tyler King. Namely, the definite promise of 'replacement cost' as the basis for the all coverage under the 'Deluxe Plus' insurance policy. This has turned out to be a material and false misrepresentation, since the definition of "replacement cost" . . . allows for depreciation, and other offsets, that materially diminish the actual coverage . . . . These knowing and material misrepresentations about the definition of "replacement cost", made by Allstate and its agent, Jon Hammet/Jon Hammet, Inc., . . . have caused damages and injuries . . . .

*See Complaint*, ¶¶ 108-109 [Document 1-1].

The allegations in Counts II and III fail to state what conduct was "grossly-unreasonable", "unreasonable", or "reckless" so as to inform any of the Defendants of the claims asserted against them. *See Complaint*, ¶¶ 98, 103 [Document 1-1]. In fact, each of these allegations are premised with the reference, "as described in this Complaint", so that the Defendants are left to guess which of the one-hundred twelve (112) paragraphs might or might not apply to them. *See Id*. The allegations in Count IV are lumped against the Defendants collectively, such that there is no difference between the allegations against them. Such allegations are hallmark characteristics of a shotgun pleading.

The Plaintiff's Complaint is a "shotgun pleading" and is contrary to Rule 8's requirements as it contains "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Griffin v. HSBC Mortg. Servs., Inc.*, 2015 WL 4041657, at 5 (N.D. Miss. July 1, 2015) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); and citing *Bates v. Laminack*, 938 F.Supp.2d 649, 666 (S.D. Tex. 2013) ("shotgun pleadings . . . incorporate antecedent allegations by reference into new allegations")).  *See also Copeland v. Axion Mortgage Group LLC*, 2016 WL 4250431 at 4 (S.D. Miss. 2016) (stating that shotgun pleadings which "fail to distinguish between actions of named defendants" . . . . are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)").

In *Meek v. Gold Coast Skydivers, Inc.*, 2016 WL 81812 at 4 (S.D. Miss. 2016), the Court criticized the plaintiff's complaint which "repeatedly lumps all three Defendants together when attempting to state his claims."  The court observed that "this and other courts have rejected such collective pleading."  *Meek*, 2016 WL 81812 at 4 (citing *Del Castillo v. PMI Holdings N. Am. Inc.*, 2015 WL 3833447, at 6 (S.D. Tex. 2015) ("A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct."); and *Ware v. U.S. Bank Nat. Ass'n*, 2013 WL 6805153, at 4 (S.D. Miss. Dec. 20, 2013) (dismissing claims without prejudice and noting that plaintiffs "should avoid lumping the defendants together and should instead separately allege the scope of any duties owed and conduct alleged to have breached those duties as to each defendant").

Because these counts fail to comply with the pleading requirements to identify and distinguish the actions of each Defendant, these counts should be disregarded and dismissed. It is worth noting that while the Plaintiff does not consistently reference "Defendants" as a collective within his Complaint, he does fail to identify what particular facts form the basis of his causes against each of the separate Defendants in the counts set forth. Further, to create confusion and complexity to a relatively straight-forward claim, he incorporates each and every antecedent allegation into each subsequent cause of action, "meaning every count necessarily implicates every fact and defendant", such that there is virtually no difference in stating "Allstate" or "Hammett" or "Defendants". *See Griffin*, 2015 WL 4041657 at 5. Rule 8 is to "[e]liminate prolixity in pleading and to achieve brevity, simplicity, and clarity" and when utilized with the heightened pleading standard of *Iqbal* and *Twombly*, the allegations are to provide the Defendants with proper notice of the separate claims against them. *Gordon v. Green*, 602 F.2d 743, 746 (5th Cir. 1979). Because the Plaintiff has failed to properly set forth those claims in his Complaint, Counts II (gross negligence), III (negligence), and IV (fraud) should be dismissed.

    **C.    Facts Alleged Fail to Support Claims for Bad Faith, Gross Negligence, Negligence, and Fraud.**

        **1.    Count I for Bad Faith Fails to State a Plausible Claim against Allstate.**

Count I of the Complaint includes a claim for bad faith refusal to pay. *See Complaint*, ¶¶ 92-96 [Document 1-1]. Excluding the shotgun allegations, the count only includes conclusory allegations such as: "As a result of Allstate's bad faith refusal to pay Tyler King's undisputed claims in the amount actually incurred by Tyler King, Tyler King has suffered significant financial and hedonic injuries . . . " and "These wrongful actions, described above, on the part of Allstate were knowing, purposeful, malicious, and unlawful. . . ." *Id*. at ¶¶ 93, 95.

In *Essinger v. Liberty Mutual Fire Insurance Company*, the Fifth Circuit Court of Appeals set forth the elements for a bad faith cause of action, stating:

> . . . the insured must first demonstrate that the claim or obligation was in fact owed . . . . Second, the insured must demonstrate that the insurer has no arguable reason to refuse to pay the claim or to perform its contractual obligation. Finally, in order to recover punitive damages from the insurer for bad faith, the insured must demonstrate that the insurer's breach of the insurance contract "results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort."

*Essinger v. Liberty Mut. Fire Ins. Co*., 529 F.3d 264, 271 (5th Cir. 2008) (citing Jackson, *Miss. Ins. Law*, § 13:2, providing summary of elements in Mississippi cases alleging bad faith).

If there is no denial or failure to perform a duty under a contract, there is no jury issue of bad faith. *Dedeaux v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 318727, at 5 (S.D. Miss. Jan. 28, 2013) (citing *Essinger*, at 274).

Within the first ninety-one (91) paragraphs of the Complaint, the Plaintiff does not allege that his claim was denied by Allstate, that Allstate abruptly cancelled his policy, that Allstate failed to adjust the claim, or some egregious or reckless conduct. Instead, he states that Allstate refused to pay "undisputed claims in the amount actually incurred". *See Complaint*, ¶ 89 [Document 1-1]. Allstate does not dispute that the claim is a covered loss, but does contest the valuation of the Plaintiff's damages.

The Plaintiff's own timeline of events in the Complaint sets forth the reasonableness of Allstate's actions and the Plaintiff, in doing so, fails to establish any plausible claim for bad faith. More particularly, the Plaintiff alleges he discovered the water damage on May 27, 2018. *Id*. at ¶ 18. He notified his insurance agent that same day and began searching for the source of the leak, including hiring laborers to demolish a wall near the hose bib and jackhammering the slab. *Id*. at ¶¶ 20-22. The Plaintiff later hired a plumber, and on May 29, 2018, the damaged water line was

bypassed and new piping was installed through the attic, allegedly resulting in a more cost-effective, and less intrusive, method of repair. *Id.* at ¶ 27. The Plaintiff alleges that his insurance agent instructed him to proceed with this plumbing repair expense of $2,551.95. *Id.* at ¶¶ 29-30. His agent, Mr. Hammett, submitted a claim to Allstate on the Plaintiff's behalf that day, on May 29, 2018. *Id.* at ¶ 41.

A contractor was then hired by the Plaintiff to begin work on June 4, 2018, to repair damages to the house as a result of the wall demolition, concrete jackhammering, sheetrock repair, and the like. *Id.* at ¶¶ 42, 45. Before the contractor began work, Allstate was to conduct an inspection to prepare an estimate of damages. On May 30, 2018, Allstate scheduled an appointment to inspect the damage on June 1, 2018. *Id.* at ¶ 48. As scheduled, the Plaintiff met with an Allstate adjuster, Bill Raphael (hereinafter "Mr. Raphael"), at the house on June 1, 2018. *Id.* at ¶ 49. That same day, June 1, 2018, the Plaintiff received an email from Mr. Raphael with an estimate of damages, albeit for less than what the Plaintiff asserts he was due. *Id.* at ¶ 53. Despite being on notice that the damage estimate was less than the contractor's estimate, the Plaintiff asserts he proceeded with having the contractor perform the repairs. *Id.* at ¶ 58. He explains his motivation as being that his wife was pregnant with their first child and his birth was expected later that month. *Id.* The Plaintiff's allegations imply that he was willing to pay a premium for the hurried repairs despite the lower Allstate estimate of damages.

Regardless of why the Plaintiff hired a contractor to make repairs to his home at a cost higher than the Allstate estimate, the contractor began repairs on June 4, 2018 as instructed by the Plaintiff. *Id.* at ¶ 60. Mr. Raphael continued adjusting the claim and revised the Allstate estimate of damages after speaking with the contractor, and that estimate was sent to the Plaintiff on June 6, 2018. *Id.* at ¶ 61. This was another instance of Allstate's good faith effort to continue adjusting

the claim. Yet, the Plaintiff again refused to consider the damage estimate because it was lower than what he previously agreed to pay the contractor. *Id*. at ¶¶ 61-62. The next week, around June 13, 2018, Mr. Raphael again sought to resolve the insurance claim, but the Plaintiff refused. *Id*. at ¶¶ 67-69. Mr. Raphael then made attempts to have an independent contractor give a separate estimate of damages. *Id*. at ¶ 70. During that process, the Plaintiff "told Allstate that if it did not pay the covered-claim in full, less the deductible, then he would have no choice but to cancel the insurance policies and sue for his damages." *Id*. at ¶ 85. The Complaint alleges that Mr. Raphael was unable to satisfy the Plaintiff's demands and the Plaintiff terminated all of his insurance policies with Allstate on July 10, 2018. *Id*. at ¶¶ 87-88.

The Complaint demonstrates that Allstate acted reasonably and that bad faith allegations are improper because the allegations reveal nothing more than a pocketbook dispute between Allstate and the Plaintiff. Further, a fatal flaw to the bad faith count is the Plaintiff's failure to allege and set forth why Allstate lacked a legitimate or arguable reason to not pay the exact amount of the claim demanded by the Plaintiff. Because there are no facts stated in the Complaint to suggest that Allstate lacked a legitimate or arguable basis for not having estimated the claim properly, the bad faith claim fails as a matter of law. The Fifth Circuit Court of Appeals has stated that a Complaint alleging bad faith which merely sets forth the elements of the claim should be dismissed.

In *Hibbets v. Lexington Ins. Co.*, 377 Fed. Appx. 352, 355-56 (5th Cir. 2010), the plaintiff made conclusory allegations of bad faith similar to those included in the case at bar. It was alleged "that Lexington has breached and continued to breach its duties of good faith and fair dealing, as well as its duty to fairly adjust claims; that Lexington has breached and continues to breach its duty to timely adjust claims . . . ; and that these actions are arbitrary, capricious, and unsupported

by any evidence and constitute bad faith." *Id*. The Fifth Circuit concluded that "[t]hese allegations are nothing more than labels and conclusions . . ." and that "[s]imply stating a conclusory allegation that Lexington's actions were arbitrary, or that Lexington breached a duty, without providing factual allegations in support is insufficient to state a claim." *Id.* at 356. The Fifth Circuit concluded that "the absence of any factual allegations dooms any claim that Lexington's actions could be construed as arbitrary, capricious or without probable cause." *Id*. The Plaintiff's allegations relating to bad faith in the case *sub judice* are no different than those in the Complaint rejected by the Fifth Circuit in *Hibbets*. There are no facts plead that suffice to show a plausible claim of bad faith against Allstate.

As alleged, it is clear that Allstate has consistently acted in good faith with its insured. Upon receipt of his claim, Allstate scheduled an appointment for the property inspection, conducted and documented the property damage, prepared a damage estimate, and sent that estimate to the Plaintiff, all in precisely 48 hours and 17 minutes after scheduling the inspection.[3] The third element for a bad faith claim requires clear and convincing evidence of malice, gross negligence, or recklessness on the part of the insurance carrier. *See Essinger v. Liberty Mut. Fire Ins. Co*., 529 F.3d 264, 271 (5th Cir. 2008); *State Farm Fire and Cas. Ins. Co. v. Simpson*, 477 So. 2d 242, 253 (Miss. 1985); and *Aetna Cas. and Sur. Co. v. Day*, 487 So. 2d 830 (Miss. 1986). Not only has the Plaintiff not set forth allegations of such conduct, his allegations actually demonstrate the opposite. Even after the Plaintiff declined the initial estimate sent on June 1, 2018, Allstate continued adjusting the claim and on June 6, 2018, increased the estimate after speaking with the contractor. *See Complaint*, ¶ 61 [Document #1-1]. Allstate continued to communicate with the

---

[3] *Compare*, Exhibits "5" and "7" of the Complaint [Document 1-1]. A claim appointment confirmation email from Allstate to the Plaintiff for the property inspection is dated May 30, 2018 at 9:07 a.m. *See Exhibit "5"* [Document 1-1]. An email with an attached damage estimate from Mr. Raphael to the Plaintiff is dated June 1, 2018 at 4:34 p.m. *See Exhibit "7"* [Document 1-1].

Plaintiff and the next week, that of June 13, 2018, efforts were made to obtain an additional, independent estimate for damages. *Id*. at ¶ 70. Despite these good faith efforts, the Plaintiff was not satisfied, threatened to cancel his policies and sue for damages, which is what he did. He terminated his Allstate policies on July 10, 2018 and filed the instant lawsuit on August 31, 2018. *Id*. at ¶¶ 87-88.

The Plaintiff's Complaint describes nothing more than a disagreement between Allstate and the Plaintiff regarding the appropriate amount to be paid on his claim.  As a result, the Complaint describes what the case law refers to as a "pocketbook dispute."  The Fifth Circuit Court of Appeals has held that where "the parties were engaged in a disagreement over the value of a claim, a so-called 'pocketbook dispute', . . . [this] cannot support a claim of bad faith." *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 634 (5th Cir. 2015) (citing *Cossit v. Alfa Ins. Corp.*, 726 So.2d 132, 139 (Miss. 1998)).[4]

In *State Farm Mut. Auto. Ins. Co. v.* Roberts, 379 So.2d 321, 322 (Miss. 1980), the Mississippi Supreme Court held that a disagreement regarding the value of a totaled automobile was a mere "pocketbook dispute", and there could be no recovery for bad faith. The Plaintiff's Complaint fails to allege facts suggesting that the case at bar involves anything more than a

---

[4] In *Tutor v. Ranger Insurance Company*, the Fifth Circuit Court of Appeals described Mississippi substantive law regarding punitive damages for pocketbook disputes such as the matter *sub judice*:

> the Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment.  *See, e.g., Aetna Casualty & Sur. Co. v. Day*, 487 So.2d 830, 832-34 (Miss. 1986) (no punitive damages in case of dispute in coverage and delay in payment); *State Farm Mut. Auto. Ins. Co. v. Roberts*, 379 So.2d 321, 322 (Miss. 1980) (award of punitive damages improper when insurer legitimately disputes the amount due under the policy); *see also Bellefonte Ins. Co. v. Griffin*, 358 So.2d 387, 391 (Miss. 1978) (dispute over method of determining amount due under the policy did not entitle insured to punitive damages).

*Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1399 (5th Cir. 1986).

pocketbook dispute. The Complaint appears to assume that Allstate should have simply paid the claim in an amount which a contractor billed for his services. If that assumption were correct, there would be no need for insurance companies to have adjusters; companies would simply pay whatever invoices their insureds submit or what they submit for reimbursement. The Complaint does not allege any facts supporting a conclusion that Allstate's estimate lacked a reasonable basis. The Complaint alleges no facts regarding Allstate's estimate at all, other than to note that it was not identical to the invoice the Plaintiff submitted to Allstate. As a result, the Complaint alleges a mere pocketbook dispute. Taking the allegations of the Complaint as true, there is no possibility of bad faith under these circumstances, much less any plausible claim for relief. Accordingly, Allstate requests that Count I for bad faith be dismissed.

### 2. Count II for Gross Negligence Fails to State a Plausible Claim against Allstate.

Count II purports to allege a claim for gross negligence against the Defendants. *See Complaint*, ¶¶ 98-101 [Document 1-1]. Aside from the shotgun allegations incorporating previously alleged facts, this count alleges no facts whatsoever to support the claims and appears to do no more than duplicate Count I's claim for bad faith. In fact, gross negligence and reckless disregard are but one of the elements of a bad faith claim. The two sentences addressed to Allstate in this count state:

> Allstate has handled the homeowners claim of Tyler King, as described in this Complaint, in a grossly-unreasonable and reckless manner. This grossly-unreasonable deviation from the standard of care owed by Allstate to Tyler King has caused Tyler King severe financial, and hedonic, damages.

*See Complaint*, ¶ 98 [Document 1-1].

Under Mississippi law, "[a]n approximate definition of gross negligence is "that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Ezell v. Bellsouth Telecommunications, Inc*., 961 F. Supp. 149, 152 (S.D. Miss. 1997) (quoting *Dame v. Estes*, 233 Miss. 315, 101 So.2d 644 (1958)). There are no factual allegations which support a conclusion that Allstate acted with gross negligence or reckless indifference. Accordingly, because there are no facts alleged to support his claim of gross negligence, Count II should be dismissed as Plaintiff has failed to state a plausible claim against Allstate.

### 3.    Count III for Negligence Fails to State a Plausible Claim against Allstate.

Count III purports to assert a claim of negligence against the Defendants. To state a claim for an action in negligence, the Plaintiff must show (1) he was owed a duty by the defendant; (2) that the defendant's conduct was a breach of that duty; (3) that defendant's breach was the proximate cause of injury to plaintiff; and (4) he suffered damage as a result.  *Hadad v. Lockeby*, 176 Miss. 660, 669, 169 So. 691, 693 (1936).

The Plaintiff's allegations in this count are virtually the same as Count II above, except that the count also alleges that Allstate acted "in an unreasonable and reckless manner." *See Complaint*, ¶ 103 [Document 1-1]. Consistent with the other counts of the Complaint, this count also makes no factual allegations, leaving the Defendant guessing at what has been alleged. The allegations in Count III do not state which, if any, of Allstate's actions were "unreasonable" or "reckless". *See Complaint*, ¶ 103 [Document 1-1]. As set forth *supra*, the allegations of Count II and III are premised with the reference, "as described in this Complaint", so that the Defendants are left to guess which of the one-hundred twelve (112) paragraphs might or might not apply to this claim of negligence. *See Id*. Such is the nature of a shotgun pleading, leaving the Defendant

and to some degree, the Court, guessing as to what has been alleged. *See Griffin v. HSBC Mortg.*

*Servs., Inc.*, 2015 WL 4041657 (N.D. Miss. July 1, 2015). The claim on negligence is a "naked

assertion[] devoid of further factual enhancement." *Flores v. Select Energy Servs., LLC*, 486 F.

App'x 429, 433 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quotation

marks and citation omitted)).

      The Plaintiff alleges that his lawsuit seeks to recover under his "Deluxe Plus" homeowners

policy of insurance with Allstate. *See Complaint*, ¶ 2 [Document 1-1]. Though the Plaintiff has

failed to articulate a cause of action based in negligence, any claim that is brought in the first-party

context must be done pursuant to the referenced insurance policy. In other words, claims of

negligence are improper unless facts establish actual negligence on behalf of Allstate (and they do

not). Rather, it appears that the Plaintiff seeks to state a claim for a breach of the contract entered

into between the Plaintiff and Allstate, viz., the "Deluxe Plus" homeowners policy. However, the

claim of negligence fails because the Complaint does not allege facts supporting the conclusion

that Allstate adjusted his claim in a negligent manner.

      **4.**    **Count IV for Fraud Fails to State a Plausible Claim against Allstate.**

      Concerning his allegation of fraud in Count IV, the Plaintiff states that the collective

"Defendants" made "knowing misrepresentations of material terms of the 'Deluxe Plus' Allstate

homeowners insurance policy . . . . Namely, the definite promise of 'replacement cost' as the basis

for the all coverage under the 'Deluxe Plus' insurance policy. This has turned out to be a material

and false misrepresentation, since the definition of 'replacement cost' . . . allows for depreciation,

and other offsets, that materially diminish the actual coverage . . . ." *See Complaint*, ¶ 108

[Document 1-1]. The Plaintiff's allegation fails to state his claim of fraud with particularity so as

to put the separate Defendants on notice of his claim. See Fed. R. Civ. P. 9(b). For that reason alone, this count should be dismissed.

In this count, it appears that the Plaintiff essentially asserts that he purchased a "replacement cost" policy and acknowledges that he was sold a "replacement cost" policy. *See Complaint*, ¶ 108 [Document 1-1]. However, the problem lies in that the Plaintiff understood "replacement cost" to be something different than what is defined in the policy. *See Id*. Such a claim is not fraud as the Plaintiff is deemed <u>as a matter of law to have read and understood</u> the terms and conditions of his insurance contract. *See Mladineo v. Schmidt*, 52 So.3d 1154, 1167 (¶ 46) (Miss. 2010). Under the "duty-to-read" and "imputed-knowledge" doctrines, an insured is deemed to have knowledge of his insurance policy. *Id*. "An insured may not neglect or purposefully omit acquainting himself with the terms and conditions of the insurance policy and then complain of his ignorance of them." *Mladineo*, at 1167 (¶ 46) (quoting *Gulf Guar. Life Ins. Co. v. Kelley*, 389 So.2d 920, 922 (Miss. 1980)).

Further, Mississippi law imposes no duty upon an insurance carrier or any party to a contract to "explain" the clear meaning of the policy. "The existence vel non of a duty of care is a question of **law** to be decided by the Court." *Rein v. Benchmark Const. Co*., 865 So.2d 1134, 1143 (Miss. 2004) (emphasis of Court) (citing *Foster v. Bass*, 575 So.2d 967, 972-73 (Miss. 1990)). There is no recognized legal duty on the part of one contracting party or an insurance carrier to explain the contract to the other party. Mississippi law does not support a finding that such duty exists.

Federal case law requires and, at a minimum, Rule 9(b) requires that the Plaintiff specify the particulars of time, place and contents of the false representations. *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (quoting *Tuchman v. DSC Communications*

*Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). The rule generally requires the who, what, when, where, and how to be set forth in the pleading. *Williams*, 112 F.3d at 179. Pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 564 F.3d 180, 185 (5th Cir. 2009).

Rule 9(b) not only ensures that defendants receive adequate notice of specific conduct alleged to have been fraudulent, but also stands "as gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *Grubbs*, 565 F.3d at 185.

Under Mississippi case law, for the Plaintiff to have a cause of action for fraud he must plead:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

*Nichols v. Tri-State Brick & Tile Co.*, 608 So.2d 324, 330 (Miss. 1992) (quoting *Whittington v. Whittington*, 535 So.2d 573, 585 (Miss. 1988)).

The Plaintiff's Complaint does not even identify the foregoing nine (9) elements or offer facts to establish the claim. Even if it did, though it does not, the Plaintiff cannot establish that his alleged reliance upon a misrepresentation was reasonable. The Allstate policy, which had been in effect for years, describes the coverages available. Where the language in a contract is not in agreement with an alleged representation of the content of the contract, the Plaintiff's reliance upon the representation is not reasonable as a matter of law. *See Ross v. Citifinancial, Inc.*, 2002 WL 461567 at 9 (S.D. Miss. 2002) (holding "Plaintiffs could not reasonably rely on a

representation of Defendants contrary to the express language of the contracts they signed."); and *Carter v. Union Security Life Ins. Co.*, 148 F.Supp. 2d 734, 736-37 (S.D. Miss. 2001).

In the case at bar, the Plaintiff's Complaint alleges fraud based upon the fact that the Plaintiff was not paid the amount of a claim he filed and what he demanded. As discussed above, the Complaint suggests that the Plaintiff understood his replacement cost policy would pay the amount he demanded or paid to a contractor and that Allstate has no right or obligation to adjust the claim. He does not allege that Allstate or any other party made such a statement. However, even if the Complaint had included this specific type of allegation, the Plaintiff could not state a claim of fraud because he cannot reasonably rely upon a purported representation that may be contradicted by the terms of his insurance policy. This is especially true when the Plaintiff has alleged he had the policy for years and is deemed to have knowledge and understanding of its terms as a matter of law.

### III.  CONCLUSION

The Plaintiff's count for bad faith against Allstate fails to state facts which support the claim. There are no facts and only a few conclusory allegations which are set forth in the Complaint, demonstrating the lack of merit to the claim. As such, the allegations constitute no more than a recitation of some of the elements of a bad faith claim (the Complaint fails to make a *prima facie* claim by at the very least including each element). Counts II and III for gross negligence and negligence against the collective Defendants also fail to set forth any factual allegations that would establish either claim. The Plaintiff's Count IV for fraud does not set forth a claim with particularity and even if it did, it would fail as a matter of law as the policy is deemed to have been read and understood by the Plaintiff. He only now seeks to reform his understanding of the terms of the contract post-claim, which is not a proper interpretation of the law.

As such, the Plaintiff's Complaint does not satisfy the pleading requirements set forth by the United States Supreme Court in *Iqbal* and *Twombly*, *supra.* For these reasons and the reasons set forth above, Allstate seeks a dismissal of the Plaintiff's Complaint with prejudice. Alternatively, Allstate seeks a judgment on the pleadings dismissing the four counts in the Complaint.

Respectfully submitted, this the 3rd day of October, 2018.

**ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, DEFENDANT**

BY:   WILKINS PATTERSON, P.A.


BY:   */s/ David E. Stovall*
ROBERT R. STEPHENSON (MSB #10772)
DAVID E. STOVALL (MSB #102706)


OF COUNSEL:

WILKINS PATTERSON SMITH PUMPHREY AND STEPHENSON, P.A.
Post Office Box 13429
Jackson, Mississippi 39236-3429
Telephone:     (601) 366-4343
Facsimile:     (601) 981-7608
Email:          bstephenson@wilkinspatterson.com
                dstovall@wilkinspatterson.com

## **CERTIFICATE OF SERVICE**

I, David E. Stovall, do hereby certify that I have this day caused to be filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record:

> Macy D. Hanson, Esquire
> The Law Office of Macy D. Hanson, PLLC
> 102 First Choice Drive
> Madison, Mississippi 39110
> Email:         macy@macyhanson.com

SO CERTIFIED, this the 3rd day of October, 2018.

*/s/ David E. Stovall*
DAVID E. STOVALL