IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TYLER S. KING                                                                                                 PLAINTIFF

V.                                                            CIVIL ACTION NO. 3:18-CV-00672-HTW-LRA

JON HAMMET, INDIVIDUALLY;
JON HAMMET, INC.; AND ALLSTATE PROPERTY
AND CASUALTY INSURANCE COMPANY                                                         DEFENDANTS

**MEMORANDUM BRIEF IN SUPPORT OF JON HAMMETT,
INDIVIDUALLY, AND JON HAMMETT, INC.'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR JUDGMENT ON THE PLEADINGS**

COME NOW, the Defendants, Jon Hammett, Individually, and Jon Hammett, Inc. (hereinafter sometimes referred to as "Mr. Hammett" or "Jon Hammett, Inc.") [1], by and through counsel, pursuant to the Federal Rules of Civil Procedure, and file this Memorandum Brief in Support of their Motion to Dismiss or, in the alternative, Motion for Judgment on the Pleadings, and in support thereof, would show unto the Court as follows:

I.   **INTRODUCTION AND FACTUAL BACKGROUND**

The Plaintiff, Tyler S. King (hereinafter referred to as "Plaintiff"), filed suit on August 31, 2018 in the Circuit Court of Madison County, Mississippi, and on September 27, 2018, Allstate properly removed the lawsuit to this Honorable Court. The facts and circumstances giving rise to this suit are the same as those separately briefed by the Defendant, Allstate Property and Casualty Insurance Company (hereinafter referred to as "Allstate"), in its Motion to Dismiss or, in the Alternative, Motion for Judgment on the Pleadings. [Documents #6 and 8, respectively]. Though

---

[1] "Hammet" and "Hammett" are used interchangeably throughout the Plaintiff's Complaint. For clarity, the correct spelling, "Hammett", is used herein.

three of the causes of action named against the separate Defendants are the same, the bases for those causes of action appear to differ and would be based separately in tort or by contract. The tort causes named against all Defendants include negligence, gross negligence, and fraud. *See Complaint*, ¶¶ 97-110 [Document #1-1]. An additional count for bad faith refusal to pay arising out of contract is asserted against Allstate, but not Mr. Hammett or Jon Hammett, Inc. *Id*. at ¶¶ 92-96. Because the Plaintiff has not properly plead any cause of action against Mr. Hammett or Jon Hammett, Inc., these Defendants should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To the extent that this Court considers this motion as a judgment on the pleadings, Mr. Hammett and Jon Hammett, Inc. should be dismissed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The Plaintiff has improperly joined his insurance agent, Mr. Hammett, and his agent's corporation, Jon Hammett, Inc., to the case at bar and they should be dismissed. In *International Energy Ventures Management, LLC v. United Energy Group, Ltd.*, 818 F.3d 193, 210-11 (5th Cir. 2016), the Fifth Circuit Court of Appeals stated that if a resident defendant is improperly joined to an action, the proper course is for the dismissal of the resident defendant without prejudice. *Id*. Because Mr. Hammett and Jon Hammett, Inc. are improperly joined, they should be dismissed without prejudice.

As more thoroughly set forth in Allstate's motions [Documents #6 and 8], the Plaintiff's lawsuit is ultimately premised upon a breach of contract as a result of a pocketbook dispute and nothing more. *See Complaint*, [Document #1-1]. For the sake of brevity and because claims against Mr. Hammett and Jon Hammett, Inc. would not arise out of the insurance contract, only the three tort causes of action against these two defendants are focused upon in the subject motion. It must be noted that the Plaintiff failed to identify a cause of action for breach of contract within his

Complaint; however, any such claim can solely be asserted against Allstate as only the Plaintiff and Allstate were in privity of contract by virtue of the insurance policy.[2] Neither Mr. Hammett nor Jon Hammett, Inc. were parties to the contract (insurance policy), and defenses available through the terms and conditions of the policy are applicable in that contractual relationship only.

Accordingly, the three tort causes of action alleged against all three Defendants for negligence, gross negligence, and fraud, must be analyzed to determine whether the Plaintiff has asserted separate, plausible claims against Mr. Hammett and Jon Hammett, Inc. A review of the allegations as set forth in the Complaint reveal that, under the *Iqbal* and *Twombly* heightened pleading standard, the Plaintiff has failed to state a claim upon which relief can be granted as to his claims against Mr. Hammett and Jon Hammett, Inc. for his claims of (1) negligence; (2) gross negligence; and (3) fraud. *See Complaint*, ¶¶ 97-110 [Document #1-1]. The Plaintiff's failure to plead fraud with particularity constitutes an additional and separate ground for dismissal of that count pursuant to Rule 9 of the Federal Rules of Civil Procedure.

The claims against Mr. Hammett and Jon Hammett, Inc. should be dismissed because the Plaintiff fails to allege facts supporting his theories of recovery. Though the Plaintiff sets forth a lengthy timeline of events within his pleading, they do not support the *prima facie* causes of action as alleged. In fact, an inspection of those allegations found within his timeline reveals that Mr. Hammett and Jon Hammett, Inc. were helpful, responsive to all communications, and professional in all respects. There are no allegations supporting the claims set forth. Further, the Plaintiff has failed to state a claim against Mr. Hammett, individually, and there are no allegations requesting the Court to pierce the corporate veil and no facts would support any such request.

---

[2] An insurance policy is a contract between parties making mutual promises. *See Corban v. United Services Auto. Ass'n.*, 20 So.3d 601, 609 (Miss. 2009) (quoting *Noxubee Co. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So.2d 1159, 1165 (Miss. 2004)).

## II. LAW AND ARGUMENT

### A. A Complaint Must State Plausible Claim for Relief.

Rule 8(a) of the Federal Rules of Civil Procedure sets forth the pleading requirements to state a claim for relief. Rule 8 requires that a pleading "must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to the relief. . . ."[3] Fed. R. Civ. P. 8(a)(2). Following the United States Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts have recognized that the pleading requirements of Rule 8 have "shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than a possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3rd Cir. 2009); *See also Noatex Corp. v. King Construction of Houston, LLC*, 2013 WL 12241279 at 1 (N.D. Miss. 2013) (observing that the *Twombly* "'plausibility' standard raises the fair notice standard to a heightened pleading standard requiring that factual allegations be more than mere labels and conclusions and a formulaic recitation of the elements of a cause of action"); *See also In Re Morey*, 2012 WL 369486 at 6 (Bankr. S.D. Miss. 2012) (noting heightened pleading standards following *Iqbal* and *Twombly*).

To survive a Rule 12(b)(6) motion, a complaint must state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679; *See also Twombly*, 550 U.S. at 547. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The allegations must have "nudged [the] claims across the line from conceivable to plausible . . . ." *Twombly*, at 569. "Where a complaint

---

[3] Pursuant to Fed. R. Civ. P. 81(c)(1), the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court."

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, at 678 (quoting *Twombly*, at 557). In *Iqbal*, the plaintiff alleged that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement . . . ." 556 U.S. at 680. The United States Supreme Court held that these are mere "bare assertions" which amount to a "formulaic recitation of the elements" of the claim. *Id.* at 681. The Court held that the "allegations are conclusory and not entitled to be assumed." *Id.*

"Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level." *Seahorn Investments, LLC v. Goodman Mfg. Co., LP*, 667 F. App'x 452, 454 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1068, 197 L. Ed. 2d 177 (2017) (quoting *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)) (unpublished). For state law claims, "[a] federal court sitting in diversity applies the substantive law of the forum state." *Id.* (quoting *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013)).

Alternatively, Rule 12(b)(6) motions to dismiss for failure to state a claim may be converted to a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See, generally,* Fed. R. Civ. P. 12(c). As necessary, the Defendant requests that the Court consider dismissal of the counts set forth under Rule 12(c).

**B.    Allegations Directed Collectively to All Defendants Should Be Disregarded and Dismissed.**

As set forth separately by Allstate in its motion to dismiss or for judgment on the pleadings, Counts II (gross negligence), III (negligence), and IV (fraud), seek to impermissibly incorporate all prior allegations within the Complaint against no specific Defendant. [Documents #6 and 8]. As filed by the Plaintiff, the Complaint is no more than a shotgun pleading that fails to differentiate

between the Defendants as the only allegations directed to Allstate or the insurance agent within each count are conclusory and a bare-bones "recitation of the elements". *See Iqbal*, at 681. As set forth, the Plaintiff lumps his claims against these Defendants

In Count II, the Plaintiff alleges that his insurance agent "Jon Hammet/Jon Hammet, Inc., committed the tort of (gross) negligence toward Tyler King when they, in a shocking disregard for interests of Tyler King, and his family, advised Tyler King to purchase the Allstate 'Deluxe Plus' Homeowners Policy No. 985 017 262. This was an act of (gross) negligence that has also directly and proximately caused Tyler King damages." *See Complaint*, ¶ 99 [Document 1-1]. In Count III, he states the same but that "Jon Hammet/Jon Hammet, Inc." acted "in an unreasonable disregard" constituting negligence. *See Complaint*, ¶ 104 [Document 1-1].

Concerning his allegation of fraud in Count VI, the Plaintiff alleges that:

> [t]he Defendants made knowing misrepresentations of material terms of the "Deluxe Plus" Allstate homeowners insurance policy that Jon Hammet/Jon Hammet, Inc. sold to Tyler King. Namely, the definite promise of 'replacement cost' as the basis for the all coverage under the 'Deluxe Plus' insurance policy. This has turned out to be a material and false misrepresentation, since the definition of "replacement cost" . . . allows for depreciation, and other offsets, that materially diminish the actual coverage . . . . These knowing and material misrepresentations about the definition of "replacement cost", made by Allstate and its agent, Jon Hammet/Jon Hammet, Inc., . . . have caused damages and injuries . . . .

*See Complaint*, ¶¶ 108-109 [Document 1-1].

The allegations in Counts II and III fail to state what conduct was "shocking", "unreasonable", or "reckless" so as to inform Mr. Hammett and Jon Hammett, Inc. of the basis for the claims asserted. *See Complaint*, ¶¶ 99, 104 [Document 1-1]. In fact, each of these allegations are premised with the reference, "as described in this Complaint", so that the Defendants are left to guess which of the one-hundred twelve (112) paragraphs might or might not apply to one or both of them. *See Id*. Likewise, the allegations in Count IV are lumped together against the

Defendants collectively, such that there is no difference between the allegations against them. To the extent that these counts attempt to assert that "Jon Hammet/Jon Hammet, Inc." advised the Plaintiff to purchase a "replacement cost" policy, the Plaintiff fails to differentiate between the actions of Mr. Hammett as an individually-named defendant and those of Jon Hammett, Inc., a corporate defendant in this cause. Such allegations are hallmark characteristics of a shotgun pleading.

The Plaintiff's Complaint is a "shotgun pleading" and is contrary to Rule 8's requirements as it contains "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Griffin v. HSBC Mortg. Servs., Inc.*, 2015 WL 4041657, at 5 (N.D. Miss. July 1, 2015) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); and citing *Bates v. Laminack*, 938 F.Supp.2d 649, 666 (S.D. Tex. 2013) ("shotgun pleadings . . . incorporate antecedent allegations by reference into new allegations")). *See also Copeland v. Axion Mortgage Group LLC*, 2016 WL 4250431 at 4 (S.D. Miss. 2016) (stating that shotgun pleadings which "fail to distinguish between actions of named defendants" . . . . are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)").

In *Meek v. Gold Coast Skydivers, Inc.*, 2016 WL 81812 at 4 (S.D. Miss. 2016), the Court criticized the plaintiff's complaint which "repeatedly lumps all three Defendants together when attempting to state his claims." The court observed that "this and other courts have rejected such collective pleading." *Meek*, 2016 WL 81812 at 4 (citing *Del Castillo v. PMI Holdings N. Am. Inc.*, 2015 WL 3833447, at 6 (S.D. Tex. 2015) ("A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish

their conduct."); and *Ware v. U.S. Bank Nat. Ass'n*, 2013 WL 6805153, at 4 (S.D. Miss. Dec. 20, 2013) (dismissing claims without prejudice and noting that plaintiffs "should avoid lumping the defendants together and should instead separately allege the scope of any duties owed and conduct alleged to have breached those duties as to each defendant").

Because these counts fail to comply with the pleading requirements to identify and distinguish the actions of each Defendant, these counts should be disregarded and dismissed. It is worth noting that while the Plaintiff does not consistently reference "Defendants" as a collective within his Complaint, he does fail to identify what particular facts form the bases of his causes against each of the separate Defendants in the counts set forth. Further, to create confusion and complexity to a relatively straight-forward claim, he incorporates each and every antecedent allegation into each subsequent cause of action, "meaning every count necessarily implicates every fact and defendant", such that there is virtually no difference in stating "Allstate" or "Hammett" or "Jon Hammett, Inc." or "Defendants". *See Griffin*, 2015 WL 4041657 at 5. In fact, the Plaintiff references "Jon Hammet/Jon Hammet, Inc." throughout his Complaint, such that one is treated literally as the other, despite being named as separate parties in this suit. Rule 8 is to "[e]liminate prolixity in pleading and to achieve brevity, simplicity, and clarity" and when utilized with the heightened pleading standard of *Iqbal* and *Twombly*, the allegations are to provide the Defendants with proper notice of the separate claims against them. *Gordon v. Green*, 602 F.2d 743, 746 (5th Cir. 1979). Because the Plaintiff has failed to properly set forth those claims in his Complaint against Mr. Hammett or Jon Hammett, Inc., Counts II (gross negligence), III (negligence), and IV (fraud), should be dismissed.

### C. Facts Alleged Fail to Support Claims for Gross Negligence, Negligence, and Fraud.

#### 1. Count II for Gross Negligence Fails to State a Plausible Claim against Mr. Hammett and/or Jon Hammett, Inc.

Count II purports to allege a claim for gross negligence against the Defendants. *See Complaint*, ¶¶ 98-101 [Document 1-1]. Aside from the shotgun allegations incorporating previously alleged facts, this count alleges no facts whatsoever to support the claims and appears to do no more than to incorporate the previous facts identified in the Complaint. The sole allegation in this count concerning any action taken states that the Plaintiff's insurance agent "Jon Hammet/Jon Hammet, Inc., committed the tort of (gross) negligence toward Tyler King when they, in a shocking disregard for interests of Tyler King, and his family, advised Tyler King to purchase the Allstate 'Deluxe Plus' Homeowners Policy No. 985 017 262. This was an act of (gross) negligence that has also directly and proximately caused Tyler King damages." *See Complaint*, ¶ 99 [Document 1-1].

Under Mississippi law, "[a]n approximate definition of gross negligence is "that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Ezell v. Bellsouth Telecommunications, Inc*., 961 F. Supp. 149, 152 (S.D. Miss. 1997) (quoting *Dame v. Estes*, 233 Miss. 315, 101 So.2d 644 (1958)). There are no factual allegations which support a conclusion that Mr. Hammett or Jon Hammett, Inc. acted in such a manner.

The Plaintiff's timeline in the Complaint sets forth that the Plaintiff discovered water damage in his home on May 27, 2018. *See Complaint*, ¶ 18 [Document 1-1]. He notified Mr. Hammett of the damage that day. *Id*. at ¶ 20. The Plaintiff later hired a plumber, and on May 29,

2018, the damaged water line was bypassed and new piping was installed through the attic, allegedly resulting in a more cost-effective, and less intrusive, method of repair. *Id.* at ¶ 27.

A contractor was then hired by the Plaintiff to begin work on June 4, 2018, to repair damages to the house as a result of the wall demolition, concrete jackhammering, sheetrock repair, and the like. *Id.* at ¶¶ 42, 45. Before the contractor began work, the Plaintiff met with an Allstate adjuster, Bill Raphael (hereinafter "Mr. Raphael"), at the house on June 1, 2018. *Id.* at ¶ 49. Later that day, Mr. Raphael's estimate of damages was provided to the Plaintiff, though the estimate was lower than the contractor's bid for work. *Id.* at ¶ 53. Despite being on notice that the damage estimate was less than the contractor's estimate, the Plaintiff asserts he proceeded with having the contractor perform the repairs. *Id.* at ¶ 58.

Throughout this process, the Plaintiff does not allege and does not state facts demonstrating a plausible claim against Mr. Hammett or against Jon Hammett, Inc. for gross negligence. In fact, the allegations demonstrate that Mr. Hammett and Jon Hammett, Inc. was helpful, communicative, and aided the Plaintiff with submitting invoices and information to Allstate in the claims process. *Id.* at ¶¶ 13-16, 20, 25, 29-31, 37, 41, 63-65. The Plaintiff would call and e-mail Mr. Hammett for assistance with the damage estimate and claim, and he also contacted Mr. Hammett when he was displeased with Mr. Raphael's estimate. *Id.* at ¶¶ 63-65. Mr. Hammett was not responsible for adjusting the damage estimate; this was Allstate's responsibility. The Complaint does not allege that Mr. Hammett and Jon Hammett, Inc. took any action or inaction that can be construed as harming the Plaintiff. After Mr. Raphael began adjusting the Plaintiff's claim, Mr. Hammett and Jon Hammett, Inc. are alleged to have made telephone calls and e-mails at the Plaintiff's request and nothing more.

Beyond these facts, the only issue identified was that the Plaintiff alleges that he bought "the upgraded 'Deluxe Plus' homeowners package from Jon Hammett/Jon Hammet, Inc. after being upsold on the idea that the better package would contain better coverage, particularly, replacement cost versus actual cash value coverage." *Id*. at ¶ 15. The sole allegation in Count II for gross negligence states that the act of selling this policy was done with a "shocking disregard" for the Plaintiff. *Id*. at ¶ 99.

Significantly, the Plaintiff's sole reason for asserting the claims against the Defendants, including Mr. Hammett and Jon Hammett, Inc., is believed to be because he was not paid "the actual replacement cost" . . . "for which [the Plaintiff] only seeks reimbursement for costs that he has **actually incurred, out-of-pocket**. . . ." *Id*. at ¶ 17 (bold in original). In other words, the Plaintiff contends he is owed a different amount than what Allstate contends is the replacement cost for the damages incurred—a pocketbook dispute. Such a claim is improper against Mr. Hammett and Jon Hammett, Inc. as they are not parties to the insurance policy. The Plaintiff would contend that Allstate should pay for any expenses incurred or for which the Plaintiff obligates Allstate to pay, without regard to the policy or the terms and conditions found within the insurance contract.

However, to be clear, the Plaintiff has not alleged that Mr. Hammett or Jon Hammett, Inc. sold him an "actual cash value" policy when he paid for a "replacement cost" policy. Instead, he alleges that he received exactly what he purchased, but now complains because he does not understand the terms and definitions found within the policy purchased. The Plaintiff wants "reimbursement for costs that he has **actually incurred, out-of-pocket**. . . ." *Id*. at ¶ 17 (bold in original). Yet, the insurance policy controls the valuation of the damages and considers the sizes, types of construction, materials used, and other factors affecting the adjustment of the claim.

Ultimately, the Plaintiff is not even contending that he is owed under a "replacement cost" policy, but something more akin to a nonexistent "reimbursement for whatever you choose to pay" policy.

The Plaintiff contends that he purchased a "replacement cost" policy, which is exactly what he was sold. *See Complaint*, ¶ 108 [Document 1-1]. He cannot now complain that he understood "replacement cost" as something different than what is defined in the policy because he is deemed <u>as a matter of law to have read and understood</u> the terms and conditions of his insurance contract. *See Mladineo v. Schmidt*, 52 So.3d 1154, 1167 (¶ 46) (Miss. 2010). Under the "duty-to-read" and "imputed-knowledge" doctrines, an insured is deemed to have knowledge of his insurance policy. *Id*. "An insured may not neglect or purposefully omit acquainting himself with the terms and conditions of the insurance policy and then complain of his ignorance of them." *Mladineo*, at 1167 (¶ 46) (quoting *Gulf Guar. Life Ins. Co. v. Kelley*, 389 So.2d 920, 922 (Miss. 1980)). Under the duty to read doctrine, the Plaintiff's lawsuit against these defendant's must be dismissed. He cannot complain about his own lack of knowledge regarding the insurance policy which had been in effect for years.

For the reasons set forth above, the Plaintiff has not set forth a *prima facie* claim of gross negligence against either Mr. Hammett or Jon Hammett, Inc. and his purported claims against them should be dismissed.

**2. Count III for Negligence Fails to State a Plausible Claim against Mr. Hammett and/or Jon Hammett, Inc.**

Count III purports to assert a claim of negligence against the Defendants. To state a claim for an action in negligence, the Plaintiff must show (1) he was owed a duty by the defendant; (2) that the defendant's conduct was a breach of that duty; (3) that defendant's breach was the proximate cause of injury to plaintiff; and (4) he suffered damage as a result. *Hadad v. Lockeby*, 176 Miss. 660, 669, 169 So. 691, 693 (1936).

The Plaintiff's allegations in this count are virtually the same as Count II above, except that the count alleges that "Jon Hammet/Jon Hammet, Inc., committed the tort of negligence toward Tyler King when they, in an unreasonable disregard for interests of Tyler King, and his family, advised Tyler King to purchase the Allstate 'Deluxe Plus' Homeowners Policy No. 985 017 262." *See Complaint*, ¶ 104 [Document 1-1]. Consistent with the other counts of the Complaint, this count makes no factual allegations, leaving the Defendant guessing at what has been alleged. Such bare assertions do not satisfy the heightened pleading standards following *Iqbal* and *Twombly* as they are no more than mere conclusory statements and a "formulaic recitation of the elements of a cause of action." *Noatex Corp. v. King Construction of Houston, LLC*, 2013 WL 12241279 at 1 (N.D. Miss. 2013). *See also In Re Morey*, 2012 WL 369486 at 6 (Bankr. S.D. Miss. 2012) (noting heightened pleading standards following *Iqbal* and *Twombly*).

As with Count II, this count demonstrates the shotgun nature of the claims asserted, as again, the Plaintiff fails to set forth a plausible claim for relief to survive a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 679; *See also Twombly*, 550 U.S. at 547. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, at 678. This claim for negligence is a "naked assertion[] devoid of further factual enhancement." *Flores v. Select Energy Servs., LLC*, 486 F. App'x 429, 433 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quotation marks and citation omitted)).

The Plaintiff has failed to allege what duty was owed to him or how Mr. Hammett or Jon Hammett, Inc. breached said duty. To the extent that the Plaintiff asserts he was owed a duty beyond the arms' length transaction of purchasing insurance, Mr. Hammett and Jon Hammett, Inc. owe no fiduciary duties to him. "Under Mississippi law, there is no fiduciary relationship or duty between an insurance company and its insured in a first party insurance contract." *Ross v.*

*Citifinancial, Inc.*, 344 F.3d 458, 466 (5th Cir. 2003) (quoting *Langston v. Bigelow*, 820 So.2d 752, 756 (Miss. App. 2002)) (string cite omitted). "In Mississippi, the purchase of insurance is deemed to be an arms' length transaction." *Id*. (quoting *Langston*, 820 So.2d at 756).

Further, as discussed above, to the extent that a reading of the policy would cure any of the Plaintiff's misunderstandings of what the "replacement cost" policy provides, he cannot rely upon his own lack of knowledge which is based upon his refusal to read his insurance policy. It is important to note that the Plaintiff does not allege that Mr. Hammett or Jon Hammett, Inc. sold him something different than what the Plaintiff expected. The Plaintiff states that he bought the upgraded "Deluxe Plus" homeowners package, which is <u>exactly</u> what was sold by "Jon Hammet/Jon Hammet, Inc." *See Complaint*, ¶¶ 14-16 [Document #1-1]. He only now disputes how replacement cost is calculated. The Plaintiff contends Allstate should "pay him the actual replacement cost" which is "reimbursement for costs that he **actually incurred, out-of-pocket** . . . ." *See Complaint*, ¶ 17 [Document #1-1] (bold in original). Yet, the Plaintiff has failed to establish how his pocketbook dispute with Allstate would establish claims against his insurance agent.

As described above, Mr. Hammett was helpful and in communication with the Plaintiff during the claims process. The timeline of the Complaint establishes that Mr. Hammett took time to assist the Plaintiff whenever requested and provided guidance as needed. None of the allegations demonstrate any element of a cause of action for negligence as the Plaintiff fails to set forth what duty or duties were owed, how such duties were breached, that these Defendants caused his injury or damages, or that the Plaintiff suffered damages as a result of their actions. *See Hadad v. Lockeby*, 176 Miss. 660, 669, 169 So. 691, 693 (1936). The Plaintiff's sole damages appear to be a pocketbook dispute after Allstate adjusted the claim and made numerous offers to settle. The claims asserted against Mr. Hammett and Jon Hammett, Inc. demonstrate that they are improperly

joined to the case sub judice. The claim for negligence against them appears to border on frivolity, and in no way satisfy the heightened pleading standard to set forth a plausible claim for relief under *Iqbal* and *Twombly*. Accordingly, the claims against Mr. Hammett and Jon Hammett, Inc. should be dismissed.

### 3. Count IV for Fraud Fails to State a Plausible Claim against Mr. Hammett and/or Jon Hammett, Inc.

Concerning his allegation of fraud in Count IV, the Plaintiff states that the collective Defendants:

> . . . made knowing misrepresentations of material terms of the "Deluxe Plus" Allstate homeowners insurance policy that Jon Hammet/Jon Hammet, Inc. sold to Tyler King. Namely, the definite promise of 'replacement cost' as the basis for the all coverage under the 'Deluxe Plus' insurance policy. This has turned out to be a material and false misrepresentation, since the definition of 'replacement cost' . . . allows for depreciation, and other offsets, that materially diminish the actual coverage . . . . These knowing and material misrepresentations about the definition of 'replacement cost', made by Allstate and its agent, Jon Hammet/Jon Hammet, Inc., . . . have caused damages and injuries . . . .

*See Complaint*, ¶¶ 108-109 [Document 1-1]. The Plaintiff's allegation fails to state his claim of fraud with particularity so as to put the separate Defendants on notice of his claim. *See* Fed. R. Civ. P. 9(b). For that reason alone, this count should be dismissed.

In this count, it appears that the Plaintiff essentially asserts the same claims asserted by Counts II and III. This is not particularly enlightening because of the shotgun nature of the allegations which incorporate all of the one-hundred twelve (112) paragraphs of the Complaint into this count for fraud. As addressed above, this is improper and those paragraphs not set forth in Count IV should be disregarded. Without waiving this contention, the Defendants address some of the allegations found within the Complaint to hopefully gain some insight as to the fraud claim asserted against them.

The Plaintiff alleges that he purchased a "replacement cost" policy and acknowledges that he was sold a "replacement cost" policy. *See Complaint*, ¶ 14-16, 108 [Document #1-1]. According to these allegations, Mr. Hammett or Jon Hammett, Inc. sold him the "Deluxe Plus" policy in an arms' length transaction. *Id*. In other words, the Plaintiff alleges he received the policy he was actually sold. *Id*. Next, the Plaintiff asserts that he was given "the definite promise of 'replacement cost' as the basis for all coverage under the 'Deluxe Plus' insurance policy. . . ." *See Complaint*, ¶ 3 [Document #1-1]. So, here again, under the Complaint he was told that the "replacement cost" policy uses "replacement cost" for claims made pursuant to that policy. *Id*. He alleges that "the definition of 'replacement cost', under the so-called 'Deluxe Plus' homeowners policy . . . allows for depreciation, and other offsets, that materially diminish the actual coverage – at least according to Allstate – under the homeowners policy at issue in this litigation." *See Complaint*, ¶ 3 [Document #1-1].

Such allegations, taken as true as required, fail to establish a claim for fraud as he was sold the exact policy he purports to have purchased and that he was told exactly how claims would be adjusted. He goes on to state a basic form of the definition of "replacement cost" under the policy. None of these allegations state a plausible claim for relief; instead, they substantiate the lack of merit in the lawsuit filed against these Defendants. The Plaintiff contends he was defrauded because "replacement cost" in a policy of insurance is not a "reimbursement for costs that he actually incurred, out-of-pocket . . . ." *See Complaint*, ¶ 17 [Document #1-1]. Such a claim is not fraud as the Plaintiff is deemed <u>as a matter of law to have read and understood</u> the terms and conditions of his insurance contract. *See Mladineo v. Schmidt*, 52 So.3d 1154, 1167 (¶ 46) (Miss. 2010). "An insured may not neglect or purposefully omit acquainting himself with the terms and

conditions of the insurance policy and then complain of his ignorance of them." *Mladineo*, at 1167 (¶ 46) (quoting *Gulf Guar. Life Ins. Co. v. Kelley*, 389 So.2d 920, 922 (Miss. 1980)).

At a minimum, Rule 9(b) requires that the Plaintiff specify the particulars of time, place and contents of fraud within his Complaint. *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 564 F.3d 180, 185 (5th Cir. 2009). Rule 9(b) not only ensures that defendants receive adequate notice of specific conduct alleged to have been fraudulent, but also stands "as gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *Grubbs*, 565 F.3d at 185.

Under Mississippi case law, for the Plaintiff to have a cause of action for fraud he must plead:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

*Nichols v. Tri-State Brick & Tile Co.*, 608 So.2d 324, 330 (Miss. 1992) (quoting *Whittington v. Whittington*, 535 So.2d 573, 585 (Miss. 1988)).

The Plaintiff's Complaint does not even identify the foregoing nine (9) elements or offer facts to establish the claim. Even if it did, though it does not, the Plaintiff cannot establish that his alleged reliance upon what he deems a misrepresentation was reasonable. The Plaintiff has stated that he was given "the definite promise of 'replacement cost' as the basis for all coverage under the 'Deluxe Plus' insurance policy. . . ." *See Complaint*, ¶ 3 [Document #1-1]. Yet, he cannot

demonstrate the falsity of this representation as "replacement cost" was exactly what was used to adjust the claim. He cannot establish his ignorance of the representation as he has admitted he was told his policy was a "replacement cost" policy. Where the language in a contract is not in agreement with an alleged representation of the content of the contract, the Plaintiff's reliance upon the representation is not reasonable as a matter of law. *See Ross v. Citifinancial, Inc.*, 2002 WL 461567 at 9 (S.D. Miss. 2002) (holding "Plaintiffs could not reasonably rely on a representation of Defendants contrary to the express language of the contracts they signed."); and *Carter v. Union Security Life Ins. Co.*, 148 F.Supp. 2d 734, 736-37 (S.D. Miss. 2001).

As discussed above, the Complaint suggests that the Plaintiff understood his replacement cost policy would pay the amount he demanded or paid to a contractor and that Allstate has no right or obligation to adjust the claim. The Plaintiff asserts he is owed "reimbursement for costs that he **actually incurred, out-of-pocket** . . . ." *See Complaint*, ¶ 17 [Document #1-1] (bold in original). In other words, the Plaintiff contends that when he submitted a claim, Allstate should have written a blank check for the contractor to fill in the amount. Regardless of the absurdity of this position, the Plaintiff does not allege that the Defendants made a statement promising a policy where Allstate would write him a blank check for his claim. However, even if the Complaint had included this specific type of allegation, the Plaintiff could not state a claim of fraud because he cannot reasonably rely upon a purported representation that is contradicted by the terms of his insurance policy. This is especially true when the Plaintiff has alleged he had the policy for years and is deemed to have knowledge and understanding of its terms as a matter of law. Accordingly, the Plaintiff's purported claim for fraud should be dismissed.

### III.  CONCLUSION

There are no facts and only a few conclusory allegations which are set forth in the Complaint, demonstrating the lack of merit to the claims against Mr. Hammett and Jon Hammett, Inc. Counts II and III for gross negligence and negligence against the collective Defendants, and particularly "Jon Hammet/Jon Hammet, Inc.", fail to set forth facts that establish the plausibility of his claims. Likewise, his claim for fraud does not set forth facts with particularity and even if it did, it would fail as a matter of law as the policy is deemed to have been read and understood by the Plaintiff. The Plaintiff instead seeks to impose his own definition of "replacement cost" to the terms of the contract post-claim, which is not permitted by the contract or the law. Further, the Plaintiff has not set forth allegations or any claims which permit him to pierce the corporate veil to allow individual claims against Mr. Hammett. Even had he done so, the conclusory and shotgun allegations in the Complaint do not distinguish the acts of one defendant from the other so that the plausibility of such a claim could be determined.

The Plaintiff's Complaint does not satisfy the pleading requirements set forth by the United States Supreme Court in *Iqbal* and *Twombly*, *supra*.  For these reasons and the reasons set forth above, Mr. Hammett and Jon Hammett, Inc. seek a dismissal of the Plaintiff's Complaint without prejudice. Alternatively, Mr. Hammett and Jon Hammett, Inc. seek a judgment on the pleadings dismissing the three counts against them in the Complaint.

Respectfully submitted, this the 8th day of October, 2018.

                              **ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, DEFENDANT**

BY:   WILKINS PATTERSON, P.A.

BY:   */s/ David E. Stovall*
        ROBERT R. STEPHENSON (MSB #10772)
        DAVID E. STOVALL (MSB #102706)

OF COUNSEL:

WILKINS PATTERSON SMITH PUMPHREY AND STEPHENSON, P.A.
Post Office Box 13429
Jackson, Mississippi 39236-3429
Telephone:	(601) 366-4343
Facsimile:	(601) 981-7608
Email:		bstephenson@wilkinspatterson.com
		dstovall@wilkinspatterson.com

## CERTIFICATE OF SERVICE

I, David E. Stovall, do hereby certify that I have this day caused to be filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record:

>Macy D. Hanson, Esquire
>The Law Office of Macy D. Hanson, PLLC
>102 First Choice Drive
>Madison, Mississippi 39110
>Email:	macy@macyhanson.com

SO CERTIFIED, this the 8th day of October, 2018.

>*/s/ David E. Stovall*
>DAVID E. STOVALL