IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TYLER S. KING                                                                                           PLAINTIFF

vs.                                                       CIVIL ACTION No.: 3:18-CV-672-HTW-LRA

JON HAMMET; JON HAMMET, INC.;
and ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY.                                                    DEFENDANTS

## ORDER

BEFORE THIS COURT is plaintiff's Motion to Remand **[Docket no. 14]**. Plaintiff Tyler S. King asks this court to enter an order remanding this lawsuit to the Madison County, Mississippi, Circuit Court from which it originated. Plaintiff's lawsuit urges claims against the defendants herein for: bad faith refusal to pay claims by Allstate Property and Casualty Insurance Company; gross negligence by all defendants; negligence by all defendants; and fraud by all defendants.

In addition to Allstate Property and Casualty Insurance Company, plaintiff is suing Jon Hammet and Jon Hammet, Inc., who are the insurance agent and insurance agency that sold plaintiff the contested homeowner's insurance policy. Filed in state court on August 31, 2018, this lawsuit was removed from there by defendant Allstate Property and Casualty Insurance Company on ground of diversity of citizenship, Title 28 U.S.C. § 1332[1]. All parties herein acknowledge that plaintiff Tyler S. King and Allstate Property and Casualty Insurance Company are diverse in citizenship, while the other two defendants, as plaintiff, are citizens of the State of Mississippi.

---

[1] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
    (1) citizens of different States;
28 U.S.C.A. § 1332 (West)

1

This circumstance prompts plaintiff to contend that this court lacks subject matter jurisdiction because complete diversity of citizenship between all of the parties is lacking.

Defendants, in opposing the remand motion, responds that plaintiff has fraudulently joined the two (2) Mississippi resident defendants in an effort to defeat diversity of citizenship jurisdiction. Once the court reaches this finding, say the defendants, the court will have to dismiss the two non-diverse parties from this action and proceed only with plaintiff and Allstate Property and Casualty Insurance Company.

This court has studied the arguments, for the reasons following, this court finds that plaintiff's motion to remand must be denied.

## I.  PROCEDURAL HISTORY

Plaintiff Tyler King filed his lawsuit in the Circuit Court of Madison County, Mississippi on August 31, 2018. Plaintiff's complaint lists the following parties: plaintiff, an adult resident of the State of Mississippi; defendant Allstate Property and Casualty Insurance Company (hereinafter referred to as "APCIC"), an insurance company incorporated under the laws of the State of Illinois; defendant Jon Hammet, an adult resident of the State of Mississippi; and Jon Hammet, Inc., a corporation incorporated under the laws of the State of Mississippi.

APCIC filed its notice of removal on September 27, 2018, alleging that complete diversity of citizenship exists between the proper parties. APCIC says this court should disregard the citizenship of the Hammet defendants – Jon Hammet and Jon Hammet, Inc. (hereinafter referred to as the "Hammet defendants") – because they were fraudulently joined. The Hammet defendants do not appear to have consented to removal, but under a theory of fraudulent joinder, are not required to do so. *See Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) (Citing *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

Plaintiff's complaint alleges the following causes of action: bad faith refusal to pay claims by APCIC; gross negligence by all defendants; negligence by all defendants; and fraud by all defendants.

II.     **FACTUAL BASIS**

Prior to May, 2018, plaintiff had bought several policies from the Hammet defendants in May, 2011, which included homeowners' insurance. The Hammet defendants allegedly told plaintiff that plaintiff should buy the Deluxe Plus Homeowner's Insurance policy because that policy would cover "actual, and full, 'replacement costs'".

Plaintiff's complaint herein arises out of an insurance claim relating to water damage he allegedly discovered in his personal residence on May 27, 2018. According to plaintiff, on May 27, 2018, plaintiff returned home after a holiday weekend and noticed water standing in two (2) bedrooms of his home – located at 209 Northshore Boulevard, Madison, Mississippi (hereinafter referred to as the "covered property"). Plaintiff says he contacted the Hammet defendants and informed them of the issue and that, meanwhile, plaintiff would be contacting a contractor to determine the source of the water.

After various demolitions to the walls of the covered property, the contractor determined that the water leak was coming from water pipes in the middle of the room adjacent to the walls the contractor had demolished. The contractor billed plaintiff $970.00 for the work. Plaintiff next contacted the Hammet defendants to inform them what the contractor had done and what he had found. The Hammet defendants instructed plaintiff to contact Wright Plumbing to inspect the damage. Plaintiff contacted Wright Plumbing and arranged for an inspection.

Wright Plumbing arrived the next day, Monday, May 28, 2018, Memorial Day, and conducted its inspection. "CJ", the Wright Plumbing inspector, determined that the water leak

source was a water pipe inside the concrete in the middle of the room. According to plaintiff, CJ informed him that the most cost-effective repair would involve terminating the leaking pipe and installing a new pipe through the attic. Wright Plumbing gave plaintiff an estimate of $2,551.95 to complete the repairs.

Plaintiff then contacted the Hammet defendants to inform them of the estimate. The Hammet defendants approved said estimate and told plaintiff that a different contractor – Rainbow International – would place dehumidifiers throughout the house to assist with the flood damage.

CJ returned to the covered property on May 29, 2018, and, while at the property, completed the repair. Plaintiff paid the invoice from CJ who recommended another contractor, Ken Simmons, to repair the flood damage. Plaintiff sent the invoice to the Hammet defendants on the same date. Plaintiff also informed the Hammet defendants that he would be calling other contractors to complete the flood damage repairs. Allegedly, the Hammet defendants informed plaintiff that he needed to start the repair process and that effort would begin the claims process under his homeowner's policy.

Plaintiff called Ken Simmons (hereinafter referred to as "Simmons") on Tuesday, May 29, 2018, who informed plaintiff that Simmons would conduct an inspection on the following day, Wednesday, May 30, 2018.

Kevin Akin (hereinafter referred to as "Aiken"), an employee of Rainbow International, came to the covered property on May 29, 2018, to set up dehumidifiers throughout the house. While at the covered property, Aiken tested the sheetrock and baseboards. Aiken's inspection revealed flood damages in various areas of the covered property. Aiken returned on May 30, 2019, and discovered that one of the dehumidifiers had failed and leaked water which had caused further damage to the floors and baseboards of the home. Before he left the residence, Aiken removed the

4

broken dehumidifier and replaced it with a new dehumidifier. He left at the house all the dehumidifiers for an additional night to assist in the repairs.

On May 29, 2018, the Hammet defendants submitted plaintiff's claim to APCIC.

On May 30, 2018, Simmons arrived at the covered property to conduct an inspection of the flood damage. On that same date, Simmons provided plaintiff with an estimate to perform the repair work. According to plaintiff, Simmons stated that damage to the covered property included: demolished concrete; demolished brick work; demolished landscaping; damaged baseboards; damaged sheetrock; damaged paint; damaged wall studs; damaged baseplates; and damaged floor stains. Plaintiff forwarded Simmons' estimate to the Hammet defendants who approved the estimate and told plaintiff to commence the repairs. Simmons told plaintiff he would begin repairs on June 4, 2018.

On the same date, May 30, 2018, APCIC informed plaintiff that it would send an insurance adjuster to the residence on June 1, 2018. On that same date, Bill Raphael (hereinafter referred to as "Raphael"), APCIC's insurance adjuster, came and toured the residence. After Raphael had left, plaintiff sent an email to Raphael with the estimate provided by Simmons. Raphael responded with a telephone call to plaintiff saying that APCIC would place the money in plaintiff's bank account that evening if plaintiff would sign some forms which offered an amount less than the alleged "replacement costs of the damages incurred". Plaintiff refused to sign the forms and then forwarded the offer of settlement to the Hammet defendants.

Simmons began repairs at the home on June 4, 2018, and completed them that week. After Simmons had completed the repairs, plaintiff met with Simmons to inspect and approve the workmanship. Finding the work satisfactory, plaintiff paid Simmons $5,203.41.

During the week that Simmons was completing the repairs, Raphael met with Simmons, and then offered an adjusted settlement offer to plaintiff which was "still below actual replacement costs." In an email to the Hammet defendants, plaintiff asked them to call plaintiff about the settlement offer and about Raphael. The Hammet defendants called later the same evening and informed plaintiff that the Hammet defendants would call APCIC to find out the status of the claim.

The following week, around June 13, 2018, Raphael again called plaintiff to discuss the claim. During that conversation, Raphael urged plaintiff to settle for the adjusted amount, which was still less than the amount plaintiff had paid to Simmons. Plaintiff refused again and Raphael said he would have someone come out to inspect the repairs to determine if he could increase the amount of the settlement offer.

On or around June 19, 2018, Aikens called plaintiff and informed plaintiff that Raphael had asked Aikens to inspect the damage and provide an estimate. Plaintiff waited for a week and contacted Aikens on June 26, 2018, asking when Aikens would be coming to the home to conduct his inspection. Aikens then agreed to come out on June 27, 2018. Aikens, though, cancelled on June 27, 2018, and said he would come out the next day. During the course of conversations, Aikens told plaintiff that Aikens did not need to conduct an inspection because the repairs already had been completed.

The following week, Raphael contacted plaintiff and informed him that APCIC had someone come to the residence and inspect the property again. Additionally, Raphael said that APCIC would not increase the amount of its settlement offer. Plaintiff informed Raphael that no one had inspected the property a second time. Raphael seemed surprised and said he would check into the allegation. Again, Raphael urged plaintiff to take the settlement offer, which plaintiff

refused. Plaintiff then informed Raphael that if APCIC would not pay the full repair amount, then he would cancel his policies and pursue legal action. Raphael said that APCIC would not pay the full amount of repairs.

On July 10, 2018, plaintiff emailed the Hammet defendants cancelling his policies because of APCIC's alleged default, and requesting payment of all funds under his home-owner's deluxe policy.

### III. ANALYSIS

#### a. Fraudulent Joinder/ Fraudulent Misjoinder

APCIC filed its Notice of Removal on September 27, 2018. [Docket no. 1]. In its Notice of Removal, APCIC acknowledged that complete diversity of citizenship does not exist between the parties as the lawsuit presently read because of the presence of the Hammet defendants, who as plaintiffs, are Mississippi citizens. APCIC, though, asks this court to find that plaintiff named the Hammet defendants as defendants only as an effort to prevent removal from state court to this federal forum – an effort deemed "fraudulent joinder". Alternatively, says APCIC, this court should find that the Hammet defendants were "fraudulently misjoined".

Fraudulent Joinder and Fraudulent Misjoinder are two related, but slightly different doctrines which expand upon and explain how courts should view lack of complete diversity of citizenship when reviewing whether the court possesses subject matter jurisdiction under § 1332. Fraudulent joinder examines whether the plaintiff named a defendant in a lawsuit to avoid removal from state court to federal court. The district court, to which the action has been removed, must look at the pleadings to determine if one of two situations exist: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 (5th Cir.

2004)(en banc)(hereinafter referred to as "*Smallwood II*")(quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Fraudulent misjoinder[2], on the other hand, examines whether the plaintiff has included causes of action which are not related to each other in an effort to avoid diversity subject matter jurisdiction. "[The court] considers whether, based on the unique circumstances at issue, there is a reasonable possibility that a Mississippi court would find that Plaintiffs' claims against [some named non-diverse defendants] were properly joined with their claims against [a diverse defendant]." *Feldman v. Rite Aid HDQTRS Corp.*, No. 517CV00009DCBMTP, 2017 WL 1508184, at *2 (S.D. Miss. Apr. 26, 2017).

---

[2] United States District Court Judge Barbour explained the history of the fraudulent misjoinder standard as follows:
> Misjoinder of plaintiffs was first adopted by the United States Court of Appeals for the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996), abrogated on other grounds, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000). The Tapscott court held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.* at 1360.
>
> However, mere misjoinder is insufficient to raise to the level of fraudulent misjoinder. *Id.* To constitute fraudulent misjoinder, the misjoinder must represent totally unsupported, or "egregious" misjoinder. *Id.*; *In re Diet Drugs*, No. Civ. A. 98–20478, 1203, 1999 WL 554584 at *3 (E.D.Pa. July 16, 1999). Citing *Tapscott*, the Fifth Circuit recently adopted the misjoinder of plaintiffs' theory. *In Re: Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir.2002) (holding that "misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction").

*Sweeney v. Sherwin Williams Co.*, 304 F. Supp. 2d 868, 872 (S.D. Miss. 2004).

However, the doctrine does not appear to be universally applied by the courts.
> The [fraudulent misjoinder doctrine] was announced by the *Eleventh Circuit in Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Several courts have criticized *Tapscott's* fraudulent joinder standard. *See, e.g., Osborn v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 1123, 1126-28 (E.D. Cal. 2004) (explaining that Tapscott's standard engenders "more procedural complexity" in removal proceedings and noting uncertainty about whether to apply federal or state joinder rules); *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842, 851-55 (S.D. Ill. 2006) (describing *Tapscott's* standard as "an improper expansion of the scope of federal diversity jurisdiction" and suggesting that courts "have foundered on shoals of tautology in trying to define fraudulent misjoinder"); *see also In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (declining to adopt or reject Tapscott's fraudulent joinder doctrine).

*Alexander v. State Farm Fire & Cas. Co.*, No. 2:18-CV-01103-RDP, 2018 WL 3956952, at *2 (N.D. Ala. Aug. 17, 2018).

Plaintiff disagrees with APCIC and persists in asking this court to remand this litigation to the state court from which it originated, that is, the Circuit Court of Madison County, Mississippi. According to plaintiff, his claims against the Hammet defendants, the two (2) non-diverse defendants, are viable and belong in this lawsuit, a circumstance which would destroy diversity of citizenship in this court.

"Federal courts are courts of limited jurisdiction." *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). Removal of an action under diversity of citizenship is permitted when the district court has subject matter jurisdiction predicated on complete diversity of citizenship between the proper parties, and when the amount in controversy is met. 28 U.S.C. §§ 1332 and 1441[3].

This § 1332 jurisdictional grant, though, has a limitation: "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. §1441(b)(2). To determine if jurisdiction is appropriate, this court considers citizenship determinations and monetary disputes between the parties as set forth at the time of removal. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d

---

[3] (a) Generally.--Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
(b) Removal based on diversity of citizenship.—
    (1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.
    (2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
28 U.S.C.A. § 1441 (West)

720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)).

As earlier stated, the Fifth Circuit has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004)(en banc)(hereinafter referred to as "*Smallwood II*")(quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).[4]

To establish fraudulent joinder defendant must demonstrate that plaintiff has no possibility of recovery against an in-state defendant: stated differently, when the district court has no reasonable basis to predict that the plaintiff might be able to recover against an in-state defendant. *See Smallwood II*, 385 F.3d at 573 (citing *Travis* at 648). The "court may [either] conduct a Rule 12(b)(6)-type analysis . . . [or], in its discretion, pierce the pleadings and conduct a summary inquiry." *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016)(quoting *Smallwood II*, at 573). When conducting a fraudulent/improper joinder analysis, the federal court resolves all disputed questions of fact and ambiguities of law in favor of the non-removing party. *See Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).

The United States Fifth Circuit Court of Appeals has held that the 12(b)(6)-type analysis utilized in evaluating improper joinder "incorporates the **federal** pleading standard articulated in *Twombly*" *Int'l Energy Ventures Mgmt.*, 818 F.3d at 200 (emphasis in original).

---

[4] In *Smallwood II* the United States Fifth Circuit Court of Appeals, sitting en banc, adopted "improper joinder" as its term of choice over the traditional term "fraudulent joinder". The court's opinion indicates that there is no substantive difference between the two terms.

Under the federal pleading standard utilized in an improper joinder analysis, a complaint must state a "plausible claim for relief" to survive a 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, at 678. "A 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood II*, 385 F.3d at 573 n. 9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)); *See also*, *Powell v. Target Corp.*, 2016 WL 4573974, at 2 (S.D. Miss. Sept. 1, 2016) (citing *Stewart v. Glenburney Healthcare*, 2008 WL 5412311, at 2 (S.D. Miss. Dec. 28, 2008) (citing *Badon*, 236 F.3d at 286 n.4)).

A federal court with diversity jurisdiction applies the substantive law of the forum state. *Learmonth v. Sears, Roebuck & Co.* 710 F.3d 249, 258 (5th Cir. 2013). Mississippi is the forum state for the lawsuit *sub judice*. This court must then, apply the substantive law of the State of Mississippi in conducting its analysis.

This court must now evaluate whether plaintiff's complaint sufficiently states a claim which would merit remanding this lawsuit to the Madison County, Mississippi, Circuit Court where it originated.

    b. *Shotgun Pleading*

APCIC first claims that the entirety of plaintiff's complaint should be disregarded because it is a "shotgun pleading". Plaintiff's complaint, continues APCIC, "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir.

2002). Shotgun pleadings are disfavored and may give rise to Rule 11[5] sanctions. *See S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986), *abrogated on other grounds*.

"A 'quintessential' shotgun pleading fails to distinguish between the actions of named defendants." *Griffin v. HSBC Mortg. Servs., Inc.*, No. 4:14-CV-00132-DMB, 2015 WL 4041657,

---

[5] (a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.
(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
    (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
    (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
    (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
(c) Sanctions.
    (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
    (2) Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.
    (3) On the Court's Initiative. On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).
    (4) Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.
    (5) Limitations on Monetary Sanctions. The court must not impose a monetary sanction:
        (A) against a represented party for violating Rule 11(b)(2); or
        (B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.
    (6) Requirements for an Order. An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.
(d) Inapplicability to Discovery. This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.
Fed. R. Civ. P. 11

at *5 (N.D. Miss. July 1, 2015). "What makes a pleading an objectionable 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Martinez v. Nueces Cnty., Tex.*, No. 2:13–CV–178, 2013 WL 6190519, at * 4 (S.D.Tex. Nov. 26, 2013).

Plaintiff has not responded to APCIC's argument. Accordingly, this court finds that plaintiff has conceded APCIC's argument. *See DeSmit v. Dallas Fort Worth Int'l Airport Bd.*, 470 F. App'x 277, 278 (5th Cir. 2012) (holding that "[t]he failure to brief is fatal to any claim.").

This court has reviewed plaintiff's complaint and finds that it contains quintessential "shotgun pleadings". Plaintiff's complaint alleges in his causes of action general statements that all the named defendants are responsible for the actions he alleged in his factual section. Plaintiff also fails to differentiate how the actions of each defendant suffice to impose liability upon the individual defendants. Accordingly, this court finds such counts to be ripe for dismissal, which would dismiss both nondiverse defendants.

  *c. Gross Negligence Claims*

"An approximate definition of gross negligence is 'that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them.'" *Ezell v. Bellsouth Telecommunications, Inc.*, 961 F. Supp. 149, 152 (S.D. Miss. 1997) (quoting *Dame v. Estes*, 233 Miss. 315, 101 So.2d 644 (1958)).

Plaintiff is deemed as a matter of law to have read and understood the terms and conditions of his insurance contract. *See Mladineo v. Schmidt*, 52 So.3d 1154, 1167 (Miss. 2010). Under the "duty-to-read" and "imputed-knowledge" doctrines, an insured is deemed to have knowledge of his insurance policy. *Id.* "An insured may not neglect or purposefully omit acquainting himself with the terms and

conditions of the insurance policy and then complain of his ignorance of them." *Mladineo*, at 1167 (¶ 46) (quoting *Gulf Guar. Life Ins. Co. v. Kelley*, 389 So.2d 920, 922 (Miss. 1980)).

Plaintiff has not responded to APCIC's argument. Accordingly, this court finds that plaintiff has conceded APCIC's argument. *See DeSmit v. Dallas Fort Worth Int'l Airport Bd.*, 470 F. App'x 277, 278 (5th Cir. 2012) (holding that "[t]he failure to brief is fatal to any claim.").

This court, nevertheless, cannot find, based upon the record before it and taking all factual inferences in favor of the non-movant, that any defendant committed an act which would give rise to liability for gross negligence. The Hammet defendants attempted on multiple occasions to assist plaintiff in the resolution of his claims. Plaintiff has not indicated any factual basis for which a finder-of-fact could find that the Hammet defendants acted with reckless indifference to any consequences which would have stemmed from the home owner's insurance policy that they sold to plaintiff.

Plaintiff alleged in his complaint that the Hammet defendants upsold him on a Deluxe Plus Homeowners Package in "shocking disregard" for plaintiff's welfare. This court is unpersuaded that the Hammet defendants' selling of an upgraded homeowners insurance policy gives rise to gross negligence liability. The crux of plaintiff's dispute in this lawsuit is the value of the repairs – a pocketbook dispute. Plaintiff complains that APCIC did not reimburse him the actual cash value of his repairs, but, rather, an adjusted amount. Plaintiff has not alleged that the Hammet defendants sold an actual cash value policy. This court simply cannot find on the record before it that plaintiff would be able to establish a prima facie case against the Hammet defendants for gross negligence. Accordingly, plaintiff's claim against the Hammet defendants for gross negligence must be dismissed.

*d. Negligence Claims*

To state a claim for an action in negligence, the Plaintiff must show (1) he was owed a duty by the defendant; (2) that the defendant's conduct was a breach of that duty; (3) that defendant's breach was the proximate cause of injury to plaintiff; and (4) he suffered damage as a result. *Hadad v. Lockeby*, 176 Miss. 660, 669, 169 So. 691, 693 (1936).

Plaintiff has not responded to APCIC's argument. Accordingly, this court finds that plaintiff has conceded APCIC's argument. *See DeSmit v. Dallas Fort Worth Int'l Airport Bd.*, 470 F. App'x 277, 278 (5th Cir. 2012) (holding that "[t]he failure to brief is fatal to any claim.").

APCIC argues that plaintiff's complaint is a formulaic recitation of the elements of the negligence cause of action without citing a sufficient factual basis for such. According to APCIC, plaintiff failed to allege that the Hammet defendants owed him a duty or that the Hammet defendants breached a duty they owed to plaintiff. The Hammet defendants provided plaintiff the policy that they sold him. The Hammet defendants did not change the policy. Significantly, plaintiff still should have read the terms and conditions of the policy. *See See Mladineo v. Schmidt*, 52 So.3d 1154, 1167 (Miss. 2010).

This court cannot find, based on the record before it, that plaintiff would be able to establish a prima facie case of negligence against the Hammet defendants. Accordingly, plaintiff's motion to remand must be denied based on this ground.

*e. F.R.C.P. 9 Pleading*

APCIC finally says that "[p]laintiff's allegation fails to state his claim of fraud with particularity so as to put the separate Defendants on notice of his claim. *See* Fed. R. Civ. P. 9(b)[6]."

---

[6] (b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.
Fed. R. Civ. P. 9

Rule 9(b) requires that plaintiff's complaint specify certain particulars: time; place; and contents of fraud. *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 564 F.3d 180, 185 (5th Cir. 2009). Rule 9(b) not only ensures that defendants receive adequate notice of specific conduct alleged to have been fraudulent, but also stands "as gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *Grubbs*, 565 F.3d at 185.

Under Mississippi case law, for the Plaintiff to have a cause of action for fraud he must plead:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

*Nichols v. Tri-State Brick & Tile Co.*, 608 So.2d 324, 330 (Miss. 1992) (quoting *Whittington v. Whittington*, 535 So.2d 573, 585 (Miss. 1988)). "Plaintiffs could not reasonably rely on a representation of Defendants contrary to the express language of the contracts they signed." *Ross v. Citifinancial, Inc.*, 2002 WL 461567 at 9 (S.D. Miss. 2002); *see also Carter v. Union Security Life Ins. Co.*, 148 F.Supp. 2d 734, 736-37 (S.D. Miss. 2001).

Plaintiff's complaint alleges that:

> The Defendants made knowing misrepresentation of material terms of the "Deluxe Plus" Allstate homeowners insurance policy that Jon Hammet/Jon Hammet, Inc. sold to Tyler King. Namely, the definite promise of "replacement cost" as the basis for the all coverage under the "Deluxe Plus" insurance policy. This has turned out to be a material and false misrepresentation, since the definition of "replacement cost", under the so-called "Deluxe Plus" homeowners policy sold to Tyler Kind allows for depreciation, and other offsets, that materially diminish the actual

coverage – at least according to Allstate – under the homeowners policy at issue in this litigation.

[Docket no. 1-1, P. 19]. According to APCIC, the above quoted language fails to meet the specificity requirements mandated by Rule 9(b) of the Federal Rules of Civil Procedure.

As stated above, Plaintiff has not responded to APCIC's argument. Accordingly, this court finds that plaintiff has conceded APCIC's argument. *See DeSmit v. Dallas Fort Worth Int'l Airport Bd.*, 470 F. App'x 277, 278 (5th Cir. 2012) (holding that "[t]he failure to brief is fatal to any claim.").

This court further finds that plaintiff's complaint fails to detail the fraudulent misrepresentation count with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. The shotgun nature of the pleading makes it difficult to determine which allegations are directed at which defendant. Plaintiff has not specified certain particulars of the alleged fraudulent misrepresentation: time; and place of the fraudulent misrepresentation. Moreover, this court is persuaded that where the plaintiff bought and was provided a policy, but fails to read the contents of the policy, he cannot later decide he had been defrauded. Plaintiff is required to know the terms and conditions of the policy he purchased. Had he done so, he would have recognized his mistake before needing the policy. Accordingly, plaintiff's motion for remand based on this ground must be denied.

IV. **MOTIONS TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS [Docket nos. 4, 6, and 12]**

The defendants, by their motions to dismiss and/or for judgment on the pleadings, have alleged the same bases for dismissing plaintiff's claims against all defendants that the parties have argued and this court has already found persuasive as discussed above. Accordingly, this court finds that plaintiff's claims against the defendants must be dismissed.

## V. PERMISSIVE AMENDMENT OF COMPLAINT

Plaintiff has not requested that this court allow him leave to amend his complaint to address the deficiencies enumerated above. While this court finds that plaintiff's complaint should be dismissed as it stands, this court will allow plaintiff fourteen (14) days to amend his complaint to cure the deficiencies as itemized in this opinion: the shotgun nature of the pleading; and the lack of specificity as to the fraud claims. *See Hart v. BayerCorp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."); *See also Douglas v. Mississippi Crime Lab.*, No. 3:12-CV-00203-HTW, 2013 WL 6230084, at *9 (S.D. Miss. Nov. 30, 2013) (While a Rule 12(b)(6) dismissal is proper based on a failure to plead sufficient facts, the undersigned is of the opinion that the minor children should be afforded an opportunity to amend their complaint.); and *Tuma v. Jackson Mun. Airport Auth.*, No. 3:09CV517-DPJ-FKB, 2012 WL 1229133, at *2 (S.D. Miss. Apr. 10, 2012) ("Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.").

## VI. CONCLUSION

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion to Remand [Docket no. 14] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the stay of this matter pending the court's ruling on plaintiff's Motion for Remand is hereby **LIFTED**.

**IT IS FURTHER ORDERED** that the Hammet defendants' Motion to Dismiss [Docket no. 12] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that APCIC's Motion to Dismiss [Docket no. 4] and APCIC's Motion for Judgment on the Pleadings [Docket no. 6] are hereby GRANTED.

**IT IS FINALLY ORDERED** that plaintiff must file an amended complaint, if any, within fourteen (14) days of the entry of this order.

**SO ORDERED** this the 29th day of September, 2019.

                                      **s/ HENRY T. WINGATE**
                                      **UNITED STATES DISTRICT COURT JUDGE**