IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**TYLER S. KING**                                                                                           **PLAINTIFF**

vs.                                                        **CIVIL ACTION No.: 3:18-CV-672-HTW-LRA**

**ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY**                                              **DEFENDANT**

## ORDER

BEFORE THIS COURT is plaintiff's Second Motion to Remand This Case. **[Docket no. 23]**. By his motion, plaintiff asks this court to remand this lawsuit to the Circuit Court of Madison County, Mississippi (hereinafter referred to as "state court"), saying that while the parties are diverse in citizenship, the amount in controversy does not satisfy the requirement of Title 28 U.S.C. § 1332[1]. Defendant says, contrariwise, that from the face of plaintiff's complaint, this court can determine that the amount in controversy requirement, too, has been met. This court has reviewed the submissions of the parties and, for the reasons following, will deny plaintiff's motion to remand.

### I.     PROCEDURAL HISTORY

Plaintiff Tyler King filed on August 31, 2018 this lawsuit in the Circuit Court of Madison County, Mississippi. His original complaint listed the following parties: plaintiff, an adult resident of the State of Mississippi; defendant Allstate Property and Casualty Insurance Company (hereinafter referred to as "APCIC"), an insurance company incorporated under the laws of the

---

[1] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
    (1) citizens of different States;
28 U.S.C.A. § 1332 (West)

1

State of Illinois; defendant Jon Hammet, an adult resident of the State of Mississippi; and Jon Hammet, Inc., a corporation incorporated under the laws of the State of Mississippi.

APCIC filed its Notice of Removal on September 27, 2018, therein alleging that complete diversity of citizenship existed between the proper parties. APCIC said this court should disregard the citizenship of the Hammet defendants – Jon Hammet individually, and Jon Hammet, Inc. (hereinafter referred to as the "Hammet defendants") – because they were "fraudulently joined".

The Hammet defendants did not appear to have consented to removal, an observation viewed by plaintiff as a fatal oversight to removal. When, however, a removing defendant proceeds pursuant to § 1332, under a theory of "fraudulent joinder", defendants accused of being fraudulently joined are not required to join in the removal. *See Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) (Citing *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

Plaintiff's original complaint alleged the following causes of action: bad faith refusal to pay just claims by APCIC; gross negligence by all defendants; negligence by all defendants; and fraud by all defendants.

After defendant's removal of this lawsuit from state court to this federal forum, plaintiff, on October 11, 2018, filed his first motion to remand. On October 3, 2018 the original defendants filed their motion to dismiss. This court reviewed the submissions of the parties and granted defendants' motion to dismiss, while denying plaintiff's first motion to remand. *See* [Docket no. 18]. This court, however, allowed plaintiff an opportunity to amend his complaint "to cure the deficiencies as itemized in [the court's] opinion, namely: the shotgun nature of the pleading; and the lack of specificity as to the fraud claims." *Id.* (Citing *Hart v. BayerCorp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)).

On October 28, 2019, Plaintiff filed his amended complaint in this federal forum. Therein he alleged the following causes of action against APCIC, now the sole defendant: bad faith refusal to pay claims; and breach of contract. Plaintiff's *ad damnum*[2] clause seeks damages for the following categories: diminution of property value; repair costs; punitive damages; hedonic damages; pain and suffering; loss of enjoyment of life; attorney fees; pre- and post-judgment interest; court costs and expenses.

Plaintiff's amended complaint also purports to erect a maximum bar for damages, stating: "Tyler King, stipulates that he does not seek, and he hereby waives, any right to pursue more than $75,000 in damages in this lawsuit. The amount in controversy in this dispute is not more than $75,000." Plaintiff reiterates this point in his *ad damnum* clause where he again states that "Tyler King stipulates that his aggregate damages in this dispute do not exceed $75,000. Further, Tyler King waives any right that he has, if any, for any relief in excess of $75,000 in this dispute."

## II.     FACTUAL BASIS[3]

In May, 2011, plaintiff bought from the Hammet defendants several insurance policies, which included homeowners' insurance. Plaintiff contends that the Hammet defendants convinced him to buy the Deluxe Plus Homeowner's Insurance Policy. That policy, as allegedly told by the Hammet defendants to plaintiff, would cover "actual, and full, 'replacement costs'".

On May 27, 2018, still insured by this policy, plaintiff looked to this policy for relief. Allegedly, on that date, plaintiff suffered water damage at his personal residence. According to plaintiff, on May 27, 2018, he returned home after a holiday weekend and noticed water standing

---

[2] ad damnum clause (ad dam-nəm) [Latin "to the damage"] (1840) A clause in a prayer for relief stating the amount of damages claimed. See prayer for relief. Cf. damnum.

AD DAMNUM CLAUSE, Black's Law Dictionary (11th ed. 2019)

[3] The "facts" herein are principally taken from this court's prior order granting defendants' motions for judgment on the pleadings, motion to dismiss, and denying plaintiff's first motion to remand. Such facts were taken from the briefs of the parties in support or opposition to such motions.

in two (2) bedrooms of his home – located at 209 Northshore Boulevard, Madison, Mississippi (hereinafter referred to as the "covered property"). Plaintiff says he immediately contacted the Hammet defendants and informed them of the issue. Meanwhile, plaintiff said he would be contacting a contractor to determine the source of the water.

After demolishing various walls of the covered property, the contractor determined that the water leak was coming from water pipes in the middle of the room adjacent to the walls the contractor had demolished. The contractor billed plaintiff $970.00 for the work. Plaintiff next contacted the Hammet defendants to inform them what the contractor had done and what the contractor had found. Supposedly, the Hammet defendants instructed plaintiff to contact Wright Plumbing Company to arrange for an inspection of the damage. Plaintiff did so.

Wright Plumbing arrived the next day, Monday, May 28, 2018, Memorial Day, and conducted its inspection. "CJ", the Wright Plumbing inspector, determined that the water leak source was a water pipe inside the concrete in the middle of the room. According to plaintiff, CJ informed him that the most cost-effective repair would involve terminating the leaking pipe and installing a new pipe through the attic. Wright Plumbing gave plaintiff an estimate of $2,551.95 to complete the repairs.

Plaintiff then contacted the Hammet defendants to inform them of the estimate. The Hammet defendants allegedly approved said estimate and told plaintiff that a different contractor – Rainbow International – would place dehumidifiers throughout the house to assist with the flood damage.

CJ returned to the covered property on May 29, 2018, and, while at the property, completed the repair. Plaintiff paid the invoice from CJ who recommended another contractor, Ken Simmons, to repair the flood damage. Plaintiff sent the invoice to the Hammet defendants on the same date.

Plaintiff also informed the Hammet defendants that he would be calling other contractors to complete the flood damage repairs. Allegedly, the Hammet defendants informed plaintiff that he needed to start the repair process and that effort would begin the claims process under his homeowner's policy.

Plaintiff next called Ken Simmons (hereinafter referred to as "Simmons") on Tuesday, May 29, 2018, who informed plaintiff that Simmons would conduct an inspection on the following day, Wednesday, May 30, 2018.

Kevin Akin (hereinafter referred to as "Aiken"), an employee of Rainbow International, arrived at the covered property on May 29, 2018, to set up dehumidifiers throughout the house. While at the covered property, Aiken tested the sheetrock and baseboards. Aiken's inspection revealed flood damages in various areas of the covered property. Aiken returned on May 30, 2019, and discovered that one of the dehumidifiers had failed and leaked water which had caused further damage to the floors and baseboards of the home. Before he left the residence, Aiken removed the broken dehumidifier and replaced it with a new dehumidifier. He left at the house all the dehumidifiers for an additional night to assist in the repairs.

On May 29, 2018, the Hammet defendants submitted plaintiff's claim to APCIC. The parties negotiated the value of that claim for some months before plaintiff filed the lawsuit *sub judice*. The parties agree that APCIC never denied the claim.

On May 30, 2018, Simmons arrived at the covered property to conduct an inspection of the flood damage. On that same date, Simmons provided plaintiff with an estimate to perform the repair work. According to plaintiff, Simmons stated that damage to the covered property included: demolished concrete; demolished brick work; demolished landscaping; damaged baseboards; damaged sheetrock; damaged paint; damaged wall studs; damaged baseplates; and damaged floor

stains. Plaintiff forwarded Simmons' estimate to the Hammet defendants who approved the estimate and told plaintiff to commence the repairs. Simmons told plaintiff he would begin repairs on June 4, 2018.

On the same date, May 30, 2018, APCIC informed plaintiff that it would send an insurance adjuster to the residence on June 1, 2018. On that same date, Bill Raphael (hereinafter referred to as "Raphael"), APCIC's insurance adjuster, came and toured the residence. After Raphael had left, plaintiff sent an email to Raphael with the estimate provided by Simmons. Raphael responded with a telephone call to plaintiff saying that APCIC would place the money in plaintiff's bank account that evening if plaintiff would sign some forms which offered an amount less than the alleged "replacement costs of the damages incurred". Plaintiff refused to sign the forms and then forwarded the offer of settlement to the Hammet defendants.

Simmons began repairs at the home on June 4, 2018, and completed them that week. After Simmons had completed the repairs, plaintiff met with Simmons to inspect and approve the workmanship. Finding the work satisfactory, plaintiff paid Simmons $5,203.41.

During the week that Simmons was completing the repairs, Raphael met with Simmons, and then offered an adjusted settlement offer to plaintiff which was "still below actual replacement costs." In an email to the Hammet defendants, plaintiff asked them to call plaintiff about the settlement offer and to tell him about Raphael. The Hammet defendants called later the same evening and informed plaintiff that the Hammet defendants would call APCIC to find out the status of the claim.

The following week, around June 13, 2018, Raphael again called plaintiff to discuss the claim. During that conversation, Raphael urged plaintiff to settle for the adjusted amount, which was still less than the amount plaintiff had paid to Simmons. Plaintiff refused again and Raphael

said he would have someone come out to inspect the repairs to determine if he could increase the amount of the settlement offer.

On or around June 19, 2018, Aikens called plaintiff and informed plaintiff that Raphael had asked Aikens to inspect the damage and provide an estimate. Plaintiff waited for a week and contacted Aikens on June 26, 2018, asking when Aikens would be coming to the home to conduct his inspection. Aikens then agreed to come out on June 27, 2018. Aikens, though, cancelled on June 27, 2018, and said he would come out the next day. During the course of conversations, Aikens told plaintiff that Aikens did not need to conduct an inspection because the repairs already had been completed.

The following week, Raphael contacted plaintiff and informed him that APCIC had someone come to the residence and inspect the property again. Additionally, Raphael said that APCIC would not increase the amount of its settlement offer. Plaintiff informed Raphael that no one had inspected the property a second time. Raphael seemed surprised and said he would check into the allegation. Again, Raphael urged plaintiff to take the settlement offer, which plaintiff refused. Plaintiff then informed Raphael that if APCIC would not pay the full repair amount, then he would cancel his policies and pursue legal action. Raphael said that APCIC would not pay the full amount of repairs.

On July 10, 2018, plaintiff emailed the Hammet defendants cancelling his policies because of APCIC's alleged default, and requesting payment of all funds under his home-owner's deluxe policy.

## III.    ANALYSIS

Federal courts are courts of limited jurisdiction.  Their civil jurisdiction principally arises under Title 28 U.S.C. § 1332 and §1331. The former is commonly referred to as diversity

jurisdiction, while the latter is hailed as federal question jurisdiction. This former jurisdictional grant concerns us here, diversity of citizenship.

The process for removal is uncomplicated. The would-be movant files a Notice of Removal in the state court that has jurisdiction over the complaint and also files the same in the United States District Court wherein the removing party contends jurisdiction lies. Thereafter, the state court clerk sends the entire file to the clerk of the federal court, who assigns a new federal case number.

Oftentimes, a state court plaintiff aggrieved over the defendant's removal will file a Motion to Remand, under Title 28 U.S.C. § 1446[4]. The removing defendant, who has the burden of establishing federal court jurisdiction, will respond with appropriate argument. The federal court judge will then address this removal/remand issue.

---

[4] (a) Generally.--A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

(b) Requirements; generally.--(1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

(2)(A) When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

(B) Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.

(C) If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.

(3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

(d) Notice to adverse parties and State court.--Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

28 U.S.C.A. § 1446 (West)

The jurisprudence governing this analysis is straightforward. Federal courts must presume that a lawsuit lies outside of their limited jurisdiction. The party asserting federal subject matter jurisdiction bears the burden of establishing such. The federal court must establish for itself that it, indeed, possesses subject matter jurisdiction. The parties, by their actions or inactions, cannot convey bogus jurisdiction on the court. The court cannot assume it exists; the parties cannot even stipulate to its existence; nor waive it. *Elam v. Kansas City Southern Ry. Co.* 635 F.3d 796, 802 (5th Cir. 2011). Further, "[a]ny ambiguities are construed against removal and in favor of remand to state court." *Jim Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 84 (5th Cir. 2013) (*See also Mumfrey v. CVS Pharmacy, Inc.,* 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).

Title 28 U.S.C. § 1332, places two (2) requirements on the removing party before this court may proclaim that it has diversity of citizenship subject matter jurisdiction. The first requires that the plaintiff's citizenship be completely diverse from that of the defendant's. The second jurisdictional requirement is that the amount in controversy be greater than $75,000, exclusive of interest and costs.

> When the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). This burden may be fulfilled in one of two ways. First, jurisdiction will be proper if "it is facially apparent from the plaintiff's complaint that [plaintiff's] "claims are likely above [$75,000]." *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). If the value of the claims is not apparent, then the defendant[] "may support federal jurisdiction by setting forth the facts – either in the removal petition [or] by affidavit – that support a finding of the requisite amount." *Id.*

*Garcia v. Koch Oil Co. of Texas, Inc.*, 351 F.3d 636, 638-39 (5th Cir. 2003).

To establish that the amount in controversy is met, the Defendant need only show by a preponderance of the evidence that the Plaintiff could recover more than $75,000, exclusive of

interest and costs. *De Aguilar v. Boeing Company*, 47. F.3d 1404, 1411 (5th Cir. 1995), cert. denied, 516 U.S. 865. This burden is met where it is facially apparent based upon the allegations in the complaint that the amount in controversy is met. *Sun Life Assur. Co. of Canada (U.S.) v. Fairley*, 485 F.Supp.2d 731, 734 (S.D. Miss. 2007). *See also Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995)(holding that Court may examine allegations in the complaint to evaluate whether it is facially apparent that complaint seeks more than minimum amount in controversy).

Where the complaint is silent regarding the specific amount of damages sought, "courts may consider the nature of the claims and the types of damages sought." *Haney v. Continental Cas. Co.*, 2008 WL 5111021, at * 1 (S.D. Miss. 2008) (citing *Allen* 63 F.3d at 1335). "It is well settled that if Mississippi law permits punitive damages attendant to the particular claims the plaintiff is seeking redress for, then those damages are included in computation of the amount in controversy. . ." *Conner v. First Family Financial Services, Inc*., 2002 WL 31056778 at *8 (N.D. Miss. 2002) (internal citations omitted).

"[F]ederal courts in Mississippi have consistently held that a claim for an unspecified amount of punitive damages is deemed to exceed the federal jurisdictional minimum." *Anderson v. Wells Fargo Bank, NA*, 2015 WL 4775356, at *2 (S. D. Miss. 2015); *Sun Life Assur. Co. v. Fairley*, 485 F. Supp. 2d 731, 735 (S.D. Miss. 2007); *Tubre v. Southern*, 2015 WL 13402817 (S. D. Miss. 2015); *Walker v. Scales*, 2014 WL 670216, at *3 (N. D. Miss. 2014). While there are constitutional limits to the maximum punitive award, there is no "bright-line ratio which a punitive damages award cannot exceed." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). "[I]n practice, few awards exceeding a single-digit ratio between punitive and

compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 U.S. at 425.

Likewise, Mississippi's federal courts have held that "Mississippi juries routinely award damages for pain and suffering and/or mental or emotional damages in excess of $75,000." *Holmes v. Citifinancial Morg. Co.*, 436 F.Supp.2d 829, 830–31 (N. D.Miss. 2006); *Anderson*, 2015 WL 4775356, at *2.

"[O]nce a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided plaintiff has not shown that it is legally certain that his recovery will not exceed the amount stated in the state complaint." *De Aguilar*, 47 F.3d at 1412 (5th 1995).

The amount demanded in the complaint satisfies the legal certainty test only if the plaintiff can point "to a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause and that prohibits the initial *ad damnum* to be increased by amendment." *Id*. "Absent such a statute, '[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, *St. Paul* makes later filings irrelevant.'" *Id.* (quoting *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992)). *See also Lang v. State Farm Fire and Cas. Co.*, 23 F.Supp.3d 661, 663 (E.D. La. 2014)(holding that affidavit limiting damages must be filed to meet legal certainty test); and *Pointer v. NPC Intern., Inc.*, 2010 WL 1050409, at *1 (N.D. Miss. 2010)(denying motion to remand where plaintiff did not file pre-removal affidavit limiting damages to $75,000 or less).

In Mississippi, there is no statute or other state law prohibiting a plaintiff from amending his complaint to demand a greater amount of damages. *See Smith v. Wal-Mart Stores, Inc.*, 489 F.Supp.2d 600, 602 (N.D. Miss. 2007)(observing that in Mississippi, "rules of civil procedure do

not limit a plaintiff's recovery to the amount pled in the complaint."). S*ee also Wal-Mart Supercenter v. Long*, 852 So.2d 568 (Miss. 2003)(affirming order permitting plaintiff to amend complaint and increase amount demanded from $75,000 to $750,000 over one year after commencement of suit, which was after deadline to remove).

"[T]he plaintiff must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint . . . ." *De Aguilar*, 47 F.3d at 1411. Plaintiffs "who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, . . . later filings [are] irrelevant." *De Aguilar*, at 1411-1412 (emphasis added). "Remand is proper only if the plaintiff has shown it is 'legally certain that his recovery will not exceed the amount stated in the state complaint.'" *In re 1994 Exxon Chemical Fire,* 558 F.3d 378, 387 (5th Cir. 2009). *See also Shaffer v. Palm Harbor Homes, Inc.*, 328 F.Supp.2d 633, 635, 639 (N.D. Miss. 2004)(noting legal certainty standard).

Plaintiff's amended complaint, while stating that he seeks no damages in excess of $75,000, is executed only by plaintiff's counsel. "A stipulation signed by counsel 'does not and could not' bind a plaintiff, 'who can circumvent the [stipulation's] intended effect by finding another attorney to amend the complaint.'" *Scirocco v. Ford Motor Co.*, 2014 WL 5817543, at *2 (S.D. Miss. Nov. 10, 2014). Moreover, plaintiff himself has not executed an affidavit stipulating and waiving any recovery of $75,000 or greater, exclusive of interest and costs.

This court is persuaded, from the face of the plaintiff's unverified amended complaint, that the plaintiff has not limited his recovery of damages, if any, to less than the jurisdictional requirement of Title 28 U.S.C. § 1332.

Plaintiff's counsel expressly, twice in his unverified amended complaint, stated that plaintiff would not accept $75,000 or more as damages if he prevailed. This court, however, cannot find such to be a binding waiver of plaintiff's right to recover more than $74,999.99, exclusive of interest and costs.

After defendant had responded to plaintiff's motion to remand, in his rebuttal, plaintiff's counsel filed an affidavit allegedly signed by the plaintiff himself. This affidavit states as follows:

1. My name is Tyler S. King.

2. I am the Plaintiff in the civil action King v. Allstate Property and Casualty Insurance Company; Civil Cause No. 3:18-cv-672-HTW-[LGI] (removed from the Circuit Court of Madison County, Mississippi).

3. I have personal knowledge of all facts in this Affidavit.

4. My claims against Allstate in this litigation do not exceed $75,000. I swear to, and am hereby bound to, this fact.

5. I will not accept an award of more than $75,000 for my claims against Allstate in this homeowner's coverage dispute, regardless of the forum where this dispute is ultimately litigated. Allstate, the Courts, and anyone else with an interest in this dispute may rely, without exception or equivocation, on this irrevocable representation.

6. I agree to provide any other assurances, in writing, requested by this Court, or Allstate, to confirm that my claims in this dispute do not exceed $75,000, including my claims for attorney's fees, punitive damages, and any hedonic damages suffered, if any.

7. Quite frankly, I am surprised that Allstate is now taking the position that my claims in this dispute exceed $75,000. If I had foreseen that Allstate would take this unreasonable position, then I would have included this Affidavit with the filing of my initial complaint in the Circuit Court of Madison County, Mississippi.

[Docket no. 26-1].

This court takes a dim view of this affidavit. First, since plaintiff submitted the affidavit in plaintiff's rebuttal brief, defendant has had no chance to respond to it.

Secondly, case law is clear: such an affidavit should have been filed with his complaint. *See De Aguilar*, 47 F.3d at 1411. This court, then, refuses to be persuaded by this flawed submission.

Accordingly, this court finds that it possesses diversity of citizenship subject matter jurisdiction and must deny plaintiff's motion to remand **[Docket no. 23]**.

**IV.    CONCLUSION**

**IT IS, THEREFORE, ORDERED that plaintiff's Second Motion to Remand [Docket no. 23] is hereby DENIED. The parties, Tyler S. King and Allstate Property and Casualty Insurance Company, are to contact within the next ten (10) days the assigned Magistrate Judge to arrange for a scheduling conference.**

**SO ORDERED this the 30th day of March, 2021.**

                                        **s/ HENRY T. WINGATE_____**
                                        **UNITED STATES DISTRICT COURT JUDGE**